L. JUNE HANKS AND HOBART BOBBITT, D/B/A STOP & SHOP v.
NATIONWIDE MUTUAL FIRE INSURANCE COMPANY

No. 7917SC989

(Filed 1 July 1980)

1. **Insurance § 136– action on fire policy – evidence of prior fire loss by insured – harmless error**

    In an action to recover under a fire insurance policy, error, if any, in the admission of testimony concerning a prior fire loss to property owned by plaintiff in Virginia was harmless where the testimony was admitted on the issue of whether plaintiff burned or procured the burning of the insured property and such issue was answered in plaintiff's favor.

2. **Trial § 16–jury's examination of excluded exhibit – instruction not to consider – absence of prejudice**

    Plaintiff was not prejudiced by the fact that the jury examined a defense exhibit after the court had excluded the exhibit where the court promptly instructed the jury to disregard the exhibit.

3. **Insurance § 136– action on fire policy – issue as to fraudulent misrepresentation of extent of loss**

    In an action to recover under a policy of fire insurance, the trial court properly submitted to the jury an issue as to whether plaintiff intentionally misrepresented the extent of her fire loss for the purpose of defrauding defendant insurer.

4. **Insurance § 136– action on fire policy – instructions – application of law to evidence**

    In an action to recover under a policy of fire insurance, the trial court did not fail to declare and explain the law arising on the evidence by failing to review her evidence in greater detail to point out the "great disparity" between plaintiff's evidence and that of defendant, and the court sufficiently explained to the jury what facts it would have to find to establish a fraudulent misrepresentation as to the extent of the loss.

APPEAL by plaintiff from *Long, Judge.* Judgment entered 2 August 1979 in Superior Court, SURRY County. Heard in the Court of Appeals 16 April 1980.

On 18 November 1977, plaintiffs (hereinafter Ms. Hanks and Bobbitt), operators of a retail grocery store known as Stop and Shop, filed a complaint against defendant (hereinafter Nationwide). Plaintiffs alleged that on 25 February 1977, they contracted with Douglas Anderson, an agent of Nationwide, for the issuance of a fire insurance policy in the sum of $40,000; that the policy covered the merchandise, furniture, and fixtures in the store; that on 14 May 1977, a fire destroyed the insured items; that Ms. Hanks promptly notified Nationwide and submitted a proof of loss on 17 June 1977; that she claimed a loss of $25,996.55; and that Nationwide has refused to pay the claim.

In its answer, Nationwide admitted that the fire destroyed some of the insured items and that Ms. Hanks submitted a proof of loss. Nationwide alleged as defenses that the fire was intentionally set by or at the behest of plaintiffs with the intent to defraud Nationwide; that plaintiffs violated the provisions of the policy by increasing the hazards of the fire and by misrepresenting and concealing material facts pertaining to the extent of the loss claimed and the manner in which the fire occurred; and that at the time the policy was issued, Nationwide was not advised as to the true identity of the co-owners of the store.

In their reply, plaintiffs alleged that prior to the issuance of the policy, Anderson was advised that Ms. Hanks and Bobbitt were co-partners and that both would be active in the business.

At the close of plaintiffs' evidence, the court allowed them to amend their complaint to allege damages of $35,000. The court directed a verdict against Bobbitt, since he was not a named insured in the policies. The jury answered the second issue against plaintiff, and she appealed.

*Gardner, Gardner, Johnson & Etringer, by John C.W. Gardner, for plaintiff appellant.*

*Hudson, Petree, Stockton, Stockton & Robinson, by W.*

*Thompson Comerford, Jr. and Grover G. Wilson, for defendant appellee.*

ERWIN, Judge.

## Plaintiff's Evidence

Ms. Hanks testified that on 21 December 1976, she and her brother, Bobbitt, bought all the stock and fixtures of Stop and Shop from Jimmy Akers for $10,000 in cash, although the bill of sale showed a purchase price of $8,500. No inventory was taken of the stock at the time of the sale. After the purchase, Bobbitt invested $7,000 in merchandise for the store. The building and land for the store were leased by plaintiffs.

After the purchase, Anderson tried to sell plaintiffs $50,000 to $60,000 worth of fire insurance on the store. Ms. Hanks finally purchased a $25,000 policy and upped the coverage to $40,000 at the insistence of Anderson, who was told by Ms. Hanks that Bobbitt was a partner. The policies were issued only in Ms. Hanks' name. From late December 1976 until the day of the fire on 14 May 1977, plaintiffs painted the interior and exterior of the building, repaired the bathrooms, and took as little money out of the business as possible. On the morning of 14 May 1977, Ms. Hanks was notified of the fire by the Sheriff's Department. Later in the morning, she notified Anderson. Mr. Gibbs, a claims adjuster with Nationwide, told her to take an inventory of the merchandise and to leave everything alone until after his investigation. Several days after the fire, the Health Department notified plaintiffs and ordered them to remove the goods. Thereafter, plaintiffs inventoried the goods and then removed them to a landfill. After the inventory, Ms. Hanks prepared the proof of loss form showing $25,000 as her loss and mailed it to Gibbs. Ms. Hanks testified that, in her opinion, the fair market value of the goods, merchandise, fixtures, and equipment in the store on 13 May 1977 was $30,000 to $35,000.

On cross-examination, Ms. Hanks testified that there was only one key to the store; that the shelves were stocked at the time of the fire; that they sold beer, wine, groceries, kerosene, and gasoline; and that at the scene of the fire, the fire marshal

told her that he thought the fire had originated around the switch box.

Bobbitt testified that on the night before the fire, he closed the store at 11:00 p.m.; that he cut the gasoline and kerosene pumps off and locked the door; that he was notified of the fire; that the North Carolina Department of Agriculture ordered plaintiffs to destroy all foods, drugs, and cosmetics damaged by the fire; and that he estimated the value of the damaged coolers and other equipment and inventory by checking with other stores.

Fletcher Joyce testified that he lived about 100 yards from the store; that prior to the fire, he frequented the store; that after plaintiffs purchased the store, the stock and appearance of the store were ten times better than before; that he helped plaintiffs take the inventory to the landfill after the fire; and that, in his opinion, the coolers in the store were of no value.

### Nationwide's Evidence

Paul Gibbs, claims adjuster of Nationwide, testified that he was notified of the fire on 16 May 1977; that he met Ms. Hanks on the following day and took photographs of the fire scene; that he was amazed at the apparent lack of inventory in the store; and that he returned to the store later and took more photographs. The inventory had been removed. However, the photographs taken indicated where items were shelved by the lack of soot.

Jimmy Atkins, the Surry County Fire Marshal on the date of the fire, testified that he and other firemen arrived at the scene of the fire and detected a heavy odor of kerosene; that he found no evidence of malfunction in the fuse box; and that the store appeared to be fifty percent stocked.

Larry Ford, a forensic chemist, testified that he tested four samples of debris taken from the store and that all four samples showed evidence of kerosene.

Joe Farrell, a salvor, testified that in May 1977, he was

contacted by Nationwide to inspect the store. When he in-spected the store on 23 May 1977, the inventory had been re-moved. From his examination of the premises and the photo-graphs taken by Gibbs, he was able to accurately identify fif-teen different items in the store and their approximate value. He concluded that their fair market value was $1,903.92.

Mitchell Armeen, an appraiser of grocery store inventories, testified that on 7 July 1977, Nationwide retained him to inspect the store; that on this date, he made an inventory of the equip-ment and fixtures; that he concluded that their fair market value prior to the fire was $5,140; and that after the fire, their salvage value was roughly $800.

Paul McGraw, a contractor dealing in rebuilding burnouts, testified that he examined the store's fixtures in June 1977 at Nationwide's request. In his opinion, $450 would be the cost of cleaning and painting the fixtures. McGraw admitted that he did not examine the interior damages of the major fixtures nor the wiring system.

David Farris testified that on the date of the fire, he was living next to the store. On the evening before the fire, he saw two people loading several boxes into two cars parked in front of the store. He did not recognize either the cars or the people.

Jimmy Akers testified that when he sold the store to plain-tiffs, he received only $8,500 consideration. The stock at the time was valued at $3,500.

Henry Huff testified that prior to the fire, Ms. Hanks told him that their (Ms. Hanks' and Bobbitt's) purpose for buying the store was to obtain a large insurance policy and then burn the store. He also heard Ms. Hanks talk about financial prob-lems she was having between December 1976 and May 1977. Ms. Hanks further told him that in 1975, she hired two men to burn an insured house owned by her. Huff testified that he had been romantically involved with Ms. Hanks' sister for fourteen years; that he does not get along well with Ms. Hanks; that he is presently serving time for assault with intent to kill Ms. Hanks' brother-in-law; that he has been convicted of attempted mur-

der of Ms. Hanks and her sister; and that he has been arrested twenty-eight times. He further testified that on 13 May 1977, Ms. Hanks told him not to come to the store. He denied setting the store on fire.

Posey Green Bobbitt, Jr. testified that he was working in the store with Bobbitt on the evening prior to the fire; that neither he nor Bobbitt removed any merchandise from the store when they closed at 11:00 p.m.; and that the store was well stocked on said date.

### Plaintiff's Rebuttal

Ms. Hanks and a woman who lived next to the store testified that in May 1977, Huff fired a gun into the store while Ms. Hanks and her sister were inside. Ms. Hanks' sister testified that prior to the fire, she had discussed purchasing insurance for the store in front of Huff; and that Huff hated her sister.

### Results at Trial

At the conclusion of the trial, the jury found that neither Ms. Hanks nor Bobbitt burned or procured the burning of the store, and that Ms. Hanks intentionally misrepresented the extent of her fire loss for the purpose of defrauding Nationwide. The trial court entered a judgment that plaintiff recover nothing.

### Assignments of Error

Plaintiff presents five major questions for our determination:

"I. Did the court err in the admission of testimony regarding a prior fire loss in 1975 involving property of the plaintiff in the State of Virginia because such evidence was irrelevant, incompetent and prejudicial?

II. Did the court err in allowing the jury to examine Exhibit # 34 after the court had sustained objections to the introduction of this exhibit?

III. Did the court err in its instructions to the jury in that the court did not state and review the evidence to the extent necessary to explain the application of the law regarding the second issue submitted to the jury as required by Rule 51 of the Rules of Civil Procedure?

IV. Did the court err in submitting the second issue to the jury?

(A) The second issue submitted to the jury does not arise from the pleadings.

(B) The evidence did not support submission of the second issue.

V. Did the court err in its instruction to the jury as to the second issue by reason of the court's failure to base its charge on the contractual provisions contained in the policy of insurance and by reason of the court's failure to charge the jury as to the specific elements required for fraud?" (Typed from material in all caps)

We answer each question, "No," for the reasons that follow and find no error.

*Admission of Testimony*

[1]   On direct examination of Nationwide's witness, Henry Huff, the record reveals the following:

"Q. Mr. Huff, did Mrs. Hanks at any time in your presence make any statement with regard to a previous fire that she had three years prior to this fire on some property in Virginia?

MR. GARDNER: Objection.

THE COURT: For what purpose is this offered?

MR. COMERFORD: Your Honor, this testimony is offered for the purpose of impeaching the credibility of Mrs. Hanks by showing prior action or conduct.

THE COURT: All right, members of the jury, you may consider this witness's statement as to what Mrs. Hanks may have previously told him for the limited purpose of assisting you, if it does, in deciding whether Mrs. Hanks is a person worthy of belief in this trial, and may not consider it for any other purpose. Overruled.

Q. Mr. Huff, prior to the fire which occurred in May of 1977, did Mrs. Hanks in your presence make any statement about a fire that she had which occurred on some property she owned in Virginia back in 1975?

A. Yes, sir.

Q. What statement did she make in that regard?

MR. GARDNER: Objection for the record, Your Honor.

THE COURT: overruled.

EXCEPTION No. 1

A. She just had this house up on Piper's Gap Mountain up there and she had a son living with her and she got him to move out, put the old furniture in it, put the good furniture down at her house and had the insurance policy on it; she got these two guys in Mount Airy to burn it down for five hundred dollars and when they went to burn it down they stole the Kelvinator out of it, and when the insurance adjuster went to adjust it, you know, he was asking about the Kelvinator and she told him that she was having the Kelvinator worked on an —"

Plaintiff argues that the trial court erred in the admission of the above statements since such evidence was irrelevant, incompetent, and prejudicial. We do not agree. The evidence was admitted relating to the first issue. Since this issue was answered in favor of plaintiff, error, if any, in the ruling challenged by this assignment of error is harmless. *Wooten V. Cagle,* 268 N.C. 366, 150 S.E. 2d 738 (1966). 1 Strong's N.C. Index 3d, Appeal and Error, § 48, p. 307. We overrule this assignment of error.

*Examination of Exhibit No. 34 by the Jury*

[2] The record reveals:

"THE COURT: Members of the jury, you have examined these exhibits. There is one which you were allowed to examine which was not received into evidence, that being defendant's exhibit number thirty-four, an inventory of the list made by the defense witness, Joe Ferrell [sic]. You will recall I sustained objections to a good portion of that inventory and the witness was allowed to testify only as to some fifteen or twenty items in which he testified he could identify the number and the item from spots left on the shelves when compared with pictures, the shelves containing the stock before it was removed. I instruct you that as to that exhibit number thirty-four, you may only consider the testimony of the witness as to those items which, according to my notes, included sunglasses, bagged peanuts, stereo tapes, soft drinks, wine, cigarettes, Little Debbie cakes, straws, paper plates, milk, and one hundred and fifty-five six packs of beer. You may not consider anything else about that exhibit which the witness did not testify about. My notes indicate that he testified that his inventory of those items amounted to nineteen hundred and three dollars and ninety-two cents at fair retail price and that the fair wholesale value would be thirty percent less than the retail value. All right, will there be any other evidence for the defense?

EXCEPTION No. 3"

Defendant specifically contends:

"Although the Court attempted by its instructions to eliminate the prejudice occasioned thereby, it is obvious from the entire record and from the jury verdict on the second issue that the Court did not succeed in disabusing the jury's minds of the prejudice created by an examination of the exhibit."

We do not agree. Where evidence is admitted, but the court

later withdraws the evidence and categorically instructs the jury not to consider such evidence, it will be presumed that the jury followed the instructions of the court, and the admission of the evidence will not ordinarily be held prejudicial. Here, the court's instructions were prompt and precise and were sufficient to cure any error that may have occurred. *Wands v. Cauble*, 270 N.C. 311, 154 S.E. 2d 425 (1967); *Smith v. Perdue* 258 N.C. 686, 129 S.E. 2d 293 (1963); 1 Stansbury's N.C. Evidence (Brandis Rev. 1973), § 28; 12 Strong's N.C. Index 3d, Trial, § 16. It is true Issue No. 2 was answered against plaintiff; however, we cannot hold that the admission of Exhibit 34 for a very short period of time amounted to prejudicial error in view of the court's instructions.

### *Submission of Issue*

[3] Plaintiff contends that the court erred in submitting the following issue to the jury: "Did the plaintiff, L. June Hanks, intentionally misrepresent the extent of her fire loss for the purpose of defrauding the defendant?" The jury answered in the affirmative. We do not find error.

Defendant alleged in its answer.

"[T]hat the plaintiffs committed certain acts in violation of the provisions of the policy by increasing the hazards of fire on or about the premises and on the further grounds that the plaintiff L. June Hanks has misrepresented and concealed certain material facts in violation of the policy provisions, both pertaining to the extent of the loss claimed under the policy and as to the manner in which the fire occurred . . . "

The policy introduced into evidence was a standard fire insurance policy. The statutory provisions as required by G.S. 58-176 (c) were incorporated therein, to wit:

"This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured

Hanks v. Insurance Co.

therein, or in case of any fraud or false swearing by the insured relating thereto."

The Court reviewed this' policy provision recently and stated the following in *Dale v. Insurance Co.,* 40 N.C. App. 715, 717, 254 S.E. 2d 41, 42, *dis. rev. denied,* 297 N.C. 609, 257 S.E. 2d 217 (1979):

"This provision is inserted in the insurance contract by the statute as a part of the public policy of the state. *Green v. Insurance Co.,* 196 N.C. 335, 145 S.E. 616 (1928). This provision is valid, and the rights and liabilities of the parties under the policy must be ascertained and determined in accordance with its terms. *Gardner v. Insurance Co.,* 230 N.C. 750, 55 S.E. 2d 694 (1949). The parties are presumed to know all the terms, provisions and conditions included in the contract of insurance. *Midkiff v. Insurance Company* 197 N.C. 139, 147 S.E. 812 (1929)."

The evidence presented related to this issue and was sufficient for the court to submit the issue to the jury and support a verdict thereon.

We note that neither plaintiff nor defendant objected to the submission of issues to the jury by the court. The record does not show that plaintiff tendered any issues to be submitted as required by better practice. In *Baker v. Construction Corp.,* 255 N.C. 302, 307, 121 S.E. 2d 731, 735 (1961), our Supreme Court stated:

" 'If the parties consent to the issues submitted, or do not object at the time or ask for different or additional issues, the objection cannot be made later.' McIntosh, *opus* cited, § 510. If defendant had not tendered issues or otherwise objected to trial on the issue submitted, it could not do so on this appeal. *Tarkington v. Criffield, supra,* and *Noland Co., Inc. v. Jones,* 211 N.C. 462, 190 S.E. 720."

*See Brant v. Compton,* 16 N.C. App. 184, 191 S.E. 2d 383 (1972). We overrule this assignment of error.

## Instructions to the Jury

**[4]**  Plaintiff contends that the trial court failed to declare and explain the law arising on the evidence as required by G.S. 1A-1, Rule 51(a), of the Rules of Civil Procedure in two events: (1) The Court should have reviewed her evidence in greater detail to point out the "great disparity" between plaintiff's evidence and that of defendant. (2) The court failed to explain to the jury what facts it would have to find to establish an intentional misrepresentation as to the extent of loss in order to constitute fraud. We do not find error.

Plaintiff did not request any special instructions prior to or during the trial. It is the duty of the party desiring instructions on a subordinate feature of the case or greater elaboration on a particular point to aptly tender request for special instructions. *King v. Powell,* 252 N.C. 506, 114 S.E. 2d 265 (1960).

It is well settled in this State that the court's charge must be considered contextually as a whole, and when so considered, if it presents the law of the case in such a manner as to leave no reasonable cause to believe the jury was misled or misinformed, this Court will not sustain an exception on the grounds that the instruction might have been better. *Gregory v. Lynch,* 271 N.C. 198, 155 S.E. 2d 488 (1967); *Jones v. Development Co.,* 16 N.C. App. 80, 191 S.E. 2d 435, *cert. denied,* 282 N.C. 304, 192 S.E. 2d 194 (1972).

We hold that the trial court sufficiently instructed the jury on the material aspects of the case arising on the evidence and fairly applied the law to the factual situation.

## Other Assignments of Error

Having answered the above question in the negative, we need not consider plaintiff's other two assignments of error and the one assigned by defendant.

City of Winston-Salem v. Concrete Co.

*Conclusion*

In the trial, we find no error.

No error.

Judges HEDRICK and ARNOLD concur.