STATE OF NORTH CAROLINA v. MELVIN LEE SMITH

No. 499A82

(Filed 28 January 1983)

1. **Burglary and Unlawful Breakings § 5.2— first degree burglary—sufficiency of evidence that crime occurred at night**

In a prosecution for first degree burglary, the evidence was sufficient to support a finding that the crime occurred at night, even though the evidence was contradictory, since one witness testified it was dark at the time and streetlights were burning, an officer testified it was dark at the time, and where defendant testified that, at the time of the incident, "If I ran out the door, I'd have probably got shot, knowing the policemen in this town. Especially at night."

**2. Criminal Law § 87.2— leading questions of elderly rape victim proper**

> In a prosecution for second degree rape, the trial court did not err in allowing the prosecutor, over objection, to ask the prosecuting witness, an elderly woman seventy-eight or seventy-nine years of age, leading questions concerning whether the defendant had penetrated her vagina with his penis and whether she had bled from her vagina as a result.

BEFORE *Battle, Judge*, presiding at the 29 March 1982 Criminal Session of Superior Court, WAKE County, the defendant was convicted of first degree burglary and second degree rape and sentenced to a term of life imprisonment for the burglary and a concurrent term of 30 years imprisonment for the rape. The defendant appealed directly to the Supreme Court as a matter of right from the judgment imposing the life sentence. His motion to bypass the Court of Appeals with regard to the conviction and judgment in the rape case was allowed on 30 August 1982.

*Rufus L. Edmisten, Attorney General, by Robert G. Webb, Assistant Attorney General, for the State.*

*Adam Stein, Appellate Defender, by James H. Gold, Assistant Appellate Defender, for defendant-appellant.*

MITCHELL, Justice.

The defendant presents two contentions for review by this Court. First, he contends that the trial court erred in permitting the case to go to the jury on a theory of first degree burglary in that the evidence was insufficient to support a finding that the breaking in question occurred at night. Second, he contends that the trial court erred in permitting the prosecutor to ask leading questions of the victim. We find both contentions to be without merit.

Given the nature of the contentions of the defendant, an extensive statement of the evidence presented by the State and the defendant is not necessary. The State introduced evidence tending to show that Ms. Douschka Rand was seventy-eight or seventy-nine years of age on 1 August 1981. At approximately 4:30 a.m. on that date, Rand was in bed in her home in Raleigh. She heard a knock on her front door and lifted the shade of her window a little and peeped out. She saw the defendant standing on her front porch and told him to get off the porch. The defend-

ant broke the locks on the front door and a screen door and began to push his way into the home. Rand tried to push him out the front door but he forced his way into the house pushing Rand with him. While Rand continued to try to push the defendant away from her, the defendant forcibly raped her. During the course of the rape, the defendant told Rand three times that he was going to kill her if she did not stop shouting. The last words she heard him say were, "I'm going to fix you." At about that time, "the law flashed a light" and the defendant ran to the back of the house. He broke the glass out of a bathroom window at the back of the house and tried to escape but could not because he could not open the window. The defendant then ran back through the house and out the front door where he fell at the feet of a police officer and was taken into custody.

The defendant testified that he was passing the Rand home at approximately 5:30 a.m. on 1 August 1981 and was knocked down by someone who came running by. He heard Rand screaming and went to help. He entered the house by the open front door and found Rand on the floor beside her bed screaming. The defendant told her who he was and picked her up and put her on the bed. At this time he fell on the bed also. He got up and went back to the front porch where he saw the policemen "because they had a flashlight." The defendant then fell off the porch. The police put handcuffs on him and placed him in a police car.

[1] The defendant first contends that the trial court erred by denying his motion to dismiss the charge of burglary on the ground that there was insufficient evidence to support a finding that the crime charged occurred at night. This contention is without merit.

In testing the sufficiency of the evidence to sustain a conviction and to withstand a motion to dismiss, the reviewing court must determine whether there is substantial evidence of each essential element of the offense and substantial evidence that the defendant was the perpetrator of the offense. *State v. Powell,* 299 N.C. 95, 261 S.E. 2d 114 (1980). To warrant a conviction of burglary in either the first or second degree, the State must show *inter alia* that the crime charged occurred during the nighttime. *State v. Cox,* 281 N.C. 131, 187 S.E. 2d 785 (1972). Therefore, if the State fails to present substantial evidence that the crime charged occurred during the nighttime, a defendant is entitled to have charges of burglary against him dismissed.

The law considers it to be nighttime when it is so dark that a man's face cannot be identified except by artificial light or moonlight. *State v. Frank*, 284 N.C. 137, 200 S.E. 2d 169 (1973); *State v. McKnight*, 111 N.C. 690, 16 S.E. 319 (1892). In the present case, Lola May McCormick, a next door neighbor of Rand, testified that she heard Rand screaming between 4:30 a.m. and 5:00 a.m. on 1 August 1981. McCormick determined the time by looking at the clock beside her bed. She immediately telephoned the police. McCormick further testified that it was dark at the time and that the streetlights were still burning. Officer G. E. Teachey of the Raleigh Police Department testified that he was in his police car at 5:09 a.m. when he received a call directing him to go to Rand's home. When he arrived at the scene and apprehended the defendant it was dark. Officer Robert Miller of the Raleigh Police Department testified that at approximately 5:00 a.m. he was in his police car and received a break-in in progress call directing him to go to the Rand home. He drove immediately to the home and, together with Officer Teachey, apprehended the defendant. Officer Miller testified that it was dark at the time. Additionally, the defendant testified that, at the time of the incident, "If I ran out the door, I'd have probably got shot, knowing the policemen in this town. Especially at night." The defendant further testified that, "I was on the porch when I seen them, because they had a flashlight." We believe that this and similar evidence throughout the record constituted substantial evidence that the crime charged occurred during the nighttime and was sufficient to withstand the defendant's motion to dismiss for lack of substantial evidence on this element of burglary.

The defendant strenuously argues that Rand's testimony that she could recognize the defendant when she first saw him on her porch even though there were no lights on in the house or on the porch constitutes direct evidence that the break-in did not occur in the "nighttime" as that element of burglary is defined at common law. The defendant ignores the fact, however, that the uncontroverted testimony of McCormick, the victim's next door neighbor, indicated that the "streetlights were burning" at the time Rand's home was entered and she was attacked. Thus, from such evidence it would be as reasonable to believe that Rand saw the defendant in the nighttime by the artificial light of the streetlights as to believe that she saw him by natural light.

In any event, the fact that there is direct evidence of the absence of an element of the offense charged does not in itself require the granting of defendant's motion to dismiss or render the evidence insufficient to sustain a conviction. The question remains one of whether there is substantial evidence of each element of the offense and of the defendant's being the perpetrator of the offense. When there is such substantial evidence of each element of the offense and of the defendant being the perpetrator, evidence tending to show the absence of an element merely creates a contradiction or discrepancy in the evidence. Upon a defendant's motion to dismiss, the court must consider the evidence in the light most favorable to the State with the State entitled to every reasonable intendment and every reasonable inference to be drawn therefrom, and contradictions and discrepancies in the evidence are for the jury to resolve and do not warrant dismissal. *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980). When so considered, the evidence in the present case was sufficient to support a reasonable inference of the defendant's guilt of each element of first degree burglary and to overcome the defendant's motion to dismiss.

The defendant points out that other portions of the evidence constitute direct evidence that the crime charged was not committed during the nighttime. For example, Rand was asked, "Was it getting light outside?" She responded, "It was—yeah. Around 4:30. Between 4:30 and 5:00 o'clock." Similarly, William P. Miller, a neighbor of the victim, testified that when the crime occurred, "It's what you call daybreak, you know. It's between 4:30 and 5:00 o'clock." This testimony did constitute direct evidence of the absence of the element of nighttime. Such direct evidence of the absence of this element required the trial court to submit to the jury the issue of the defendant's guilt of the lesser included offense of felonious breaking or entering in addition to the issue of his guilt of burglary. It was not sufficient, however, to require the granting of the defendant's motion to dismiss, since it merely tended to create a contradiction or discrepancy in the evidence which the State was entitled to have resolved in its favor by the trial court when ruling on the motion to dismiss. *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980). The trial court correctly instructed the jury and permitted them to consider possible verdicts on the issues of first degree burglary and the lesser

included offense of felonious breaking or entering. These instructions and the trial court's denial of the defendant's motion to dismiss were proper and did not constitute error.

The State has suggested that, in addition to considering the evidence offered at trial to show that the offense charged occurred during nighttime, this Court take judicial notice that the schedule for "Sunrise and Sunset" computed by the Nautical Almanac Office, United States Naval Observatory reveals that sunrise occurred in Raleigh (Wake County) on 1 August 1981 at 5:22 a.m., Eastern Standard Time. *State v. Garrison*, 294 N.C. 270, 240 S.E. 2d 377 (1978) (judicial notice of such schedules taken). The State also suggests that we take judicial notice of the fact that North Carolina was operating under Daylight Savings Time on 1 August 1981 which would mean that sunrise occurred at 6:22 a.m. Eastern Daylight Savings Time in Wake County on that date. We find it unnecessary to consider taking judicial notice of such facts, however, in light of our foregoing conclusion that there was substantial evidence introduced at trial tending to show that the offense charged occurred during the nighttime.

[2] The defendant next contends that the trial court erred in permitting the prosecutor to ask leading questions of the victim Rand with regard to the charge against the defendant for second degree rape. The record clearly reveals that the trial court did allow the prosecutor, over objection, to ask Rand leading questions concerning whether the defendant had penetrated her vagina with his penis and whether she had bled from her vagina as a result.

It is within the discretion of the trial court to allow counsel to ask leading questions of a witness, especially in cases in which the witness's age and the delicate nature of the subject, such as sexual matters, may require leading questions. *State v. Williams*, 303 N.C. 507, 279 S.E. 2d 592 (1981); *State v. Greene*, 285 N.C. 482, 206 S.E. 2d 229 (1974); *State v. Pearson*, 258 N.C. 188, 128 S.E. 2d 251 (1962). Absent an abuse of that discretion, the trial court's ruling will not be disturbed on appeal. *State v. Williams*, 303 N.C. 507, 279 S.E. 2d 592 (1981). Here, the victim was an elderly woman seventy-eight or seventy-nine years of age. It is readily apparent, even from the cold record before us on appeal, that the questions of a very specific sexual nature embarrassed the victim

and that she was reluctant to discuss such matters or was unfamiliar with some of the specific sexual terminology which was a part of the questions. In view of the obvious reluctance of the elderly victim Rand to testify concerning specific sexual acts, we cannot say it was an abuse of the trial court's discretion to permit the prosecutor to ask leading questions tending to show what had taken place and the existence of the elements of the crime charged. We find that the trial court committed no error in this regard.

The defendant received a fair trial free of prejudicial error.

No error.