STATE OF NORTH CAROLINA v. DONALD ALEXIS BOWERS

No. COA99-61

(Filed 7 December 1999)

**1. Evidence— expert testimony—special knowledge and expertise—procedures forming basis of conclusions—not new scientific methods**

The trial court did not err in a first-degree burglary case by admitting the expert testimony of three witnesses concerning the evidence gathered from the victim's panties because: (1) all three testified regarding their related study and experience that gave them special knowledge and expertise to qualify them as an expert witness; (2) all three thoroughly explained to the jury the procedures used in their analysis forming the basis of their conclusions; and (3) none of the scientific methods employed by the three experts were new methods where the reliability of the method was at issue.

**2. Burglary and Unlawful Breaking or Entering— first-degree burglary—nighttime element—sufficiency of evidence**

Viewing the evidence in the light most favorable to the State, the trial court did not err in a first-degree burglary case by concluding the State presented sufficient evidence of the burglary occurring at night because: (1) the victim testified her clock displayed 6:50 a.m. when the assailant entered her room and the room was still dark; and (2) with the proper adjustments of the National Climate Data Center's sunrise time in light of Daylight Savings Time, sunrise occurred at 7:33 a.m. on the day of the crime.

**3. Burglary and Unlawful Breaking or Entering— first-degree burglary—instruction on breaking "or" entering—not prejudicial error**

The trial court did not commit prejudicial error in a first-degree burglary case by instructing that defendant could be convicted of first-degree burglary if the jury found a "breaking or entering" rather than a "breaking and entering" because: (1) considering the jury charge as a whole, it was clear that the jury understood the conviction requires both a breaking and entering; and (2) defendant has failed to show that a different result would have been reached at trial absent this alleged error.

STATE v. BOWERS

[135 N.C. App. 682 (1999)]

Appeal by defendant from judgment entered 12 March 1998 by Judge Claude S. Sitton in Superior Court, Buncombe County. Heard in the Court of Appeals 25 October 1999.

*John T. Barrett for the defendant.*

*Michael F. Easley, Attorney General, by Bruce S. Ambrose, Assistant Attorney General, for the State.*

WYNN, Judge.

On 12 March 1998, a jury found Donald Alexis Bowers guilty of first-degree burglary and statutory rape of a fourteen-year old girl. The trial court sentenced him to a consecutive sentence of 77 to 102 months for the first-degree burglary charge and 288 to 355 months for the statutory rape charge.

The State's evidence at trial showed that on 10 October 1996, a fourteen-year-old female, who resided with her mother in an apartment complex, awoke at approximately 6:30 a.m. to see her mother off for work. After her mother departed, she went back to sleep, but was awakened at 6:50 a.m. by creaking sounds from the stairs leading to her bedroom. Thereafter, a man entered her room, put his hands around her throat and told her, "[i]f you say another G— d— word I will kill you." He then pulled her pants down, put his penis into her vagina, ejaculated and left the apartment.

Following his departure, the female minor went to her mother's employment and informed her of the incident. The mother called the police who responded and took the female minor to a hospital. At the hospital, health care providers collected a sample of her hair, saliva, blood, swabs from her vagina and panties and the police recovered several dark hairs on the bedroom sheets.

Initially, the female minor identified an individual other than the defendant as her assailant, but scientific testing at the State Bureau of Investigation laboratory eliminated that person as a suspect.

Based on a lead, an investigating police officer interviewed the defendant. During the interview, the defendant consented to a request to provide samples of his hair, saliva, and blood.

Suzanne Barker, a forensic serologist at the State Bureau of Investigation laboratory analyzed stains found in the female minor's panties and identified the stains as spermatozoa. Also, Ms. Barker

STATE v. BOWERS

[135 N.C. App. 682 (1999)]

prepared slides of the defendant's blood samples and transferred the slides to Michael Budzynski, a DNA analyst.

Mr. Budzynski examined the blood samples and determined that the defendant's DNA could not be ruled out as being the same DNA found in the victim's panties and sweat pants. According to Mr. Budzynski, the probability of finding the same DNA profile in another person is at least 1 in 5.5 billion.

Jim Gregory, a hair and fiber analyst with the State Bureau of Investigation laboratory, compared the head and pubic hair samples from the female minor, the defendant, and two other males with the dark hairs recovered from the female minor's panties and around her bed. Mr. Gregory concluded that the hair found in the female minor's panties was microscopically consistent with the defendant's hair. Mr. Gregory also concluded that the hair from the female minor's panties was microscopically inconsistent with the hair of the other two men sampled.

The State also tendered certified documents to the trial court from the National Climate Data Center to show that on the date of the crime, 10 October 1996, sunrise occurred at 6:33 a.m. This data, however, did not reflect the Daylight Savings Time which was in effect on the date of the crime. In this regard, the trial court took judicial notice that Daylight Savings Time was in effect on that particular day.

On appeal, the defendant contends that the trial court committed reversible error in: (I) admitting certain expert witness testimony, (II) denying his motion to dismiss the first-degree burglary charge, and (III) instructing the jury on the first-degree burglary charge.

I.

[1] The defendant first asserts on appeal that the trial court erred in admitting the expert testimony of Suzanne Barker, Jim Gregory, and Michael Budzynski because: (1) the foundations for the expert witnesses' testimony was insufficient and (2) the jury was asked to sacrifice its independence and accept the experts' conclusions on faith. We disagree.

The admissibility of expert witness testimony is governed by Rule 702 of the North Carolina Rules of Evidence.

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill,

experience, training or education, may testify thereto in the form of an opinion.

N.C. Gen. Stat. § 8C-1, Rule 702 (1992). " 'The essential question in determining the admissibility of opinion evidence is whether the witness, through study or experience, has acquired such skill that he is better qualified than the jury to form an opinion on the subject matter to which his testimony applies.' " *State v. Underwood*, 134 N.C. App. 533, 541, 518 S.E.2d 231, 238 (1999) (quoting *State v. Mitchell*, 283 N.C. 462, 467, 196 S.E.2d 736, 739 (1973)). Usually, a determination of whether a witness is qualified as an expert is exclusively within the discretion of the trial court and will not be reversed absent a complete lack of evidence to support its ruling. *See id.*

In the instant case, all three witnesses testified regarding their related study and experience which gave them special knowledge and expertise to qualify them as an expert witness.

For instance, Ms. Barker testified that her professional background as a forensic serologist included: a Bachelor of Science degree in medical technology with a minor in biology and chemistry; an internship in medical technology; in-house training at the State Bureau of Investigation in forensic technology; and serving as an expert witness on three prior occasions.

Mr. Gregory testified that his professional background as a hair and fiber expert included: a Bachelor of Science Degree in Textile Chemistry; five years experience and training in hair and fiber identification and comparison as a State Bureau of Investigation agent; and serving as an expert witness on sixteen prior occasions.

Mr. Budzynski testified that his professional background as an expert in forensic DNA analysis included: a Bachelor of Science degree in biochemistry and zoology; postgraduate studies in molecular biology; attending numerous scientific meetings and workshops of the American Academy of Forensic Scientists and Southern Association of Forensic Science; two years in-house training at the State Bureau of Investigation laboratory; advanced DNA training at the Federal Bureau of Investigation laboratory in Quantico, Virginia; performing DNA analysis in over 200 cases; and serving as an expert in DNA analysis on approximately 35 prior occasions.

Furthermore, contrary to the defendant's assertions, all three expert witnesses thoroughly explained to the jury the procedures used in their analysis forming the basis of their conclusions.

STATE v. BOWERS

[135 N.C. App. 682 (1999)]

Therefore, we find the trial court's determination that these witnesses possessed the requisite skills to testify as an expert to be supported by the evidence in the record. *See id.*

Moreover, we find meritless defendant's assertions that the jury was asked to sacrifice its independence and accept the experts' conclusions on faith. In arguing this point, the defendant challenges: (1) Suzanne Barker's testimony that the stains on the female minor's panties were spermatozoa; (2) Jim Gregory's testimony that one of the hairs collected from the female minor's panties was "found to be microscopically consistent with the pubic hair of [the] [defendant]"; and (3) Michael Budzynski's testimony that the DNA found in the female minor's panties and sweat pants matched the defendant's DNA and the probability of finding the same DNA profile in another person was at least 1 in 5.5 billion.

The defendant bases his argument on *State v. Bullard*, 312 N.C. 129, 322 S.E.2d 370 (1984) and *State v. Pennington*, 327 N.C. 89, 393 S.E.2d 847 (1990).

In *Bullard*, the Supreme Court addressed the reliability of footprint identification and gave the legal concerns for determining whether a proffered method of proof is sufficiently reliable to be admissible at trial. *Bullard*, 312 N.C. at 129, 322 S.E.2d at 370.

Similarly, in *Pennington*, the Supreme Court examined the reliability of a DNA profile testing, which at the time was a relatively new scientific method of proof. *Pennington*, 327 N.C. at 89, 393 S.E.2d at 847.

In the case at bar, unlike *Bullard* and *Pennington*, none of the scientific methods employed by the three expert witnesses were new methods where the reliability of the method was at issue. Therefore, the present case is distinguishable from *Bullard* and *Pennington*. Hence, the defendant's reliance on those two cases is misplaced.

II.

**[2]** The defendant next argues that the State failed to present sufficient evidence for a rational jury to determine that he was guilty beyond a reasonable doubt of first-degree burglary. In particular, the defendant contends that there was insufficient evidence to support a finding that the crime occurred at night.

Our Court, in testing the sufficiency of the evidence to sustain a conviction and to withstand a motion to dismiss, must determine

whether there is substantial evidence of each essential element of the offense and substantial evidence that the defendant was the perpetrator of the offense. *See State v. Smith*, 307 N.C. 516, 518, 299 S.E.2d 431, 434 (1983). Substantial evidence is the amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *See State v. Ledford*, 315 N.C. 599, 607, 340 S.E.2d 309, 315 (1986).

"The elements of the crime of burglary in the first degree are: (1) the breaking (2) and entering (3) in the nighttime (4) into a dwelling house or a room used as a sleeping apartment (5) of another (6) which is actually occupied at the time of the offense (7) with the intent to commit a felony therein." *Id.* at 606, 340 S.E.2d at 314. Because the pertinent element at issue is the nighttime element, we limit our discussion to that particular element.

Our courts have held that to warrant a conviction for burglary in either the first or second degree the State must show, *inter alia*, that the crime charged occurred during the nighttime. *See State v. Cox*, 281 N.C. 131, 187 S.E.2d 785 (1972). Thus, "if the State fails to present substantial evidence that the crime charged occurred during the nighttime, a defendant is entitled to have charges of burglary against him dismissed." *Smith*, 307 N.C. at 518, 299 S.E.2d at 434.

Since there is no statutory definition of "nighttime", our courts must adhere to the common law definition of "nighttime". *See Ledford*, 315 N.C. at 607, 340 S.E.2d at 315. This definition states that it is nighttime " 'when it is so dark that a man's face cannot be identified except by artificial light or moonlight.' " *Smith*, 307 N.C. at 519, 299 S.E.2d at 434 (quoting *State v. Lyszaj*, 314 N.C. 256, 266, 333 S.E.2d 288, 295 (1985)).

In the case *sub judice*, the female minor testified that just before the assailant entered her room, her clock displayed 6:50 a.m. Even though the female minor saw the assailant, she testified that her night light was on and yet the room was still dark.

Further, the State presented evidence of official records from the National Climate Data Center showing that on 10 October 1996, the day of the crime, sunrise occurred at 6:33 a.m., Eastern Standard Time. Although on that particular day Daylight Savings Time was in effect, the National Climate Data Center's sunrise time did not include adjustments for Daylight Savings Time. It follows that with the adjustments for Daylight Savings Time, sunrise occurred at 7:33 a.m. on the

day of the crime—approximately 43 minutes after the defendant entered the female minor's room.

Viewing this evidence in the light most favorable to the State, we find the evidence sufficient to establish the nighttime element necessary to sustain a conviction of first-degree burglary. *See State v. Bell*, 87 N.C. App. 626, 632, 362 S.E.2d 288, 291 (1987) (stating that "[i]n ruling upon a motion to dismiss in a criminal action, the trial court is required to consider the evidence in the light most favorable to the State, disregarding discrepancies and contradictions, and drawing all reasonable inferences in the State's favor").

Accordingly, the defendant's second assignment of error is without merit.

## III.

**[3]** Finally, the defendant contends that the trial court's instructions on first-degree burglary—which included a statement that the defendant could be convicted of the crime if the jury found "a breaking or entering" rather than "a breaking and entering"—constituted prejudicial error. We disagree.

"It is well settled in this State that the court's charge must be considered contextually as a whole, and when so considered, if it presents the law of the case in such a manner as to leave no reasonable cause to believe the jury was misled or misinformed, this Court will not sustain an exception on the grounds that the instruction might have been better." *Hanks v. Nationwide Mut. Fire Ins. Co.*, 47 N.C. App. 393, 404, 267 S.E.2d 409, 415 (1980).

In the instant case, the relevant instructions given by the trial court on first-degree burglary were:

Now in the other cases wherein the defendant has been accused of first degree burglary, Members of the Jury, I charge that in that case he has been accused of first degree burglary, which is breaking and entering the occupied dwelling house or sleeping apartment of another without the tenant's consent in the nighttime with the intent to commit a felony, that is, statutory rape of a fourteen year old. . . .

First, that there was a breaking or an entry by the defendant. I instruct you that the opening of a closed door may be a breaking. I further instruct you that the going into a building or a dwelling may be an entry.

Second—the second element is that the dwelling house was broken into and entered.

Third, that the breaking and entering was during the nighttime.

Fourth, that at the time of the breaking and entering the dwelling house was occupied. . . .

The fourth element is that at the time of the breaking and entering the dwelling house was occupied.

Fifth, that the tenant did not consent to the breaking and entering.

And sixth, that at the time of the breaking and entering the defendant intended to commit statutory rape.

So Members of the Jury, in regard to this charge, or this case, I instruct you and charge you that if you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant broke and entered the occupied dwelling house or sleeping apartment . . . .

If you don't find the defendant guilty of first degree burglary you must determine whether he's guilty of felonious breaking or entering. Felonious breaking or entering differs from burglary, first degree burglary, in that both a breaking and entering are not necessary. . . .

Considering the jury charge as a whole, we find that the trial court's instructions made clear to the jury that a first-degree burglary conviction requires both a breaking and entering.

Even assuming *arguendo* that the trial court's jury instructions constituted error, the defendant has failed to show that had the alleged error not been committed, a different result would have been reached at trial. *See State v. Martin*, 322 N.C. 229, 238-39, 367 S.E.2d 618, 623-24 (1988) (stating that "[i]n order to show prejudicial error an appellant must show that there is a reasonable possibility that, had the error not been committed a different result would have been reached at trial").

In the case at bar, there was competent evidence in the record from which the jury could have concluded that both a breaking and entering occurred. For instance, the female minor testified that she

heard her mother lock the door when she left for work. On cross-examination the female minor conceded that she was unsure whether the door was actually locked, but affirmed her testimony that she heard the door lock.

Moreover, while there was no evidence of forced entry, the mere act of opening the apartment door constituted a "breaking". *See State v. Eldridge*, 83 N.C. App. 312, 314, 349 S.E.2d 881, 883 (1986) (stating that "[a] breaking is defined as any act of force, however slight, used to make an entrance through any usual or unusual place of ingress, whether open, partly open, or closed").

In light of this substantive evidence, we cannot hold that the result would have been different had the trial court correctly stated "breaking and entering" in the first part of its instructions to the jury. Therefore, if any error resulted from the trial court's instructions, such error constituted harmless error.

Accordingly, the defendant's third assignment of error is denied.

In sum, we hold that the defendant received a fair trial free from prejudicial error.

No error.

Judges LEWIS and MARTIN concur.