JEFFREY P. MAZZA v. ROBERT A. HUFFAKER AND ROBERT A. HUFFAKER, M.D., P.A.

No. 8115SC1180

(Filed 15 March 1983)

1. **Physicians, Surgeons, and Allied Professions § 14— psychiatrist—malpractice—sufficiency of evidence**

   Where there was evidence in a case that the relevant standard of care applicable to Chapel Hill psychiatrists included the negative imperative that they not have sexual relations with their patients' spouses, and there was evidence that defendant violated such standard, plaintiff presented sufficient evidence of the professional malpractice element of his claim.

2. **Physicians, Surgeons, and Allied Professions § 20.2— malpractice—instructions on abandonment of patient**

   Evidence that a psychiatrist-patient relationship existed between defendant and plaintiff, and that defendant had sexual relations with plaintiff's wife thereby acting in violation of the standard of care required of a psychiatrist was evidence which supported an instruction that the jury must find there was malpractice if it found that defendant "abandoned [plaintiff] as a patient."

3. **Physicians, Surgeons, and Allied Professions § 20.2— malpractice—instructions on failure to use proper skill and ability**

   In an action to recover damages for malpractice by defendant psychiatrist, the trial court did not err in instructing the jury that it must find malpractice if it determined defendant "failed to use that degree of professional learning, skill and ability which others similarly situated ordinarily possess." When considered with other instructions, the court sufficiently provided guidance as to the applicable standard of care and as to what could be considered as evidence of violations by defendant of the standard of care.

4. **Physicians, Surgeons, and Allied Professions § 20.2— malpractice—instructions**

   The trial court properly instructed the jury that it could find malpractice if it determined that defendant "continued to treat [plaintiff] after becoming emotionally and sexually involved with [plaintiff's] wife."

5. **Physicians, Surgeons, and Allied Professions § 20.2— malpractice—instructions**

   Where the evidence and instructions in a case placed central focus on the sexual relations between defendant and the plaintiff's wife during the term of defendant's and plaintiff's psychiatrist-patient relationship, the trial judge did not err in instructing that the jury must find malpractice if it determined that defendant "failed to recognize and guard against the transfer or countertransference phenomenon."

**6. Physicians, Surgeons, and Allied Professions § 20.2— malpractice—instructions**

The trial court did not err in instructing that the jury must find malpractice if it found that defendant psychiatrist abandoned plaintiff as a patient or if it found defendant continued to treat plaintiff after becoming emotionally and sexually involved with plaintiff's wife since each may be answered in the affirmative in that each deals with defendant having sexual relations with plaintiff's wife prior to an appropriate, gradual and careful cessation of the psychiatrist-patient relationship between defendant and plaintiff.

**7. Physicians, Surgeons, and Allied Professions § 20.2— malpractice—failure to instruct on contributory negligence proper**

In an action to recover damages from defendant on the grounds of negligence, criminal conversation, and alienation of affections, the trial court properly failed to instruct on contributory negligence with respect to the malpractice claim.

**8. Physicians, Surgeons, and Allied Professions § 15.1— medical malpractice—expert testimony proper**

The trial court properly admitted expert testimony that sexual relations between a psychiatrist and the wife of a patient would render useless previous treatment of that patient by the psychiatrist and would make it extremely difficult for the patient to ever enter again into a trusting relationship with any other psychiatrist since the testimony dealt directly with the situation presented by the evidence.

**9. Physicians, Surgeons, and Allied Professions § 15.1— medical malpractice—expert testimony properly admitted**

It was not improper for an expert witness to give content to the accepted standards of care by referring to the ethical standards of the profession since expert testimony asserted that both standards were the same.

**10. Physicians, Surgeons, and Allied Professions § 21— medical malpractice—submission of issue of punitive damages proper**

In an action in which defendant psychiatrist proceeded to have sexual relations with his patient's wife despite an awareness of the special vulnerabilities of his patient if the patient were to discover such a rendezvous, the evidence was sufficient to support an inference by the jury that defendant acted with conscious disregard of the mental well-being of his patient, and hence, the evidence was sufficient to support submission of a punitive damage issue in the medical malpractice case.

**11. Physicians, Surgeons, and Allied Professions § 21— medical malpractice —damages—permanent pain and suffering and prospective income loss**

Evidence tending to show that a patient who discovered his wife in bed with his psychiatrist would never again be able to form the trust and relationship with a psychiatrist which is necessary for psychiatric treatment, and that such a discovery would harm the mental well-being of a patient combined with evidence that plaintiff is a manic depressive requiring psychiatric care and that he constantly relives the discovery of his psychiatrist with his wife in his

bed and that it impairs his concentration and deprives him of sleep, was sufficient to permit the jury to infer with reasonable certainty that defendant's tortious act will cause plaintiff pain and suffering of a permanent nature.

**12. Physicians, Surgeons, and Allied Professions § 21— malpractice action— damages—prospective losses in income**

Evidence of plaintiff's profession, age, and life expectancy, evidence about the permanent nature of plaintiff's injury, testimony about plaintiff's annual gross income, and testimony that an incident had a deleterious effect on plaintiff's dental practice, academic work, and clinical skills presented a sufficient basis to allow the jury to draw an inference as to the amount of money necessary to compensate him for reduced earning capacity.

**13. Physicians, Surgeons, and Allied Professions § 21— malpractice action—compensatory damages for past medical expenses**

Where plaintiff incurred expenses of approximately $17,000 for psychiatric treatment paid by plaintiff to defendant and where defendant's wrongful conduct destroyed whatever benefits the plaintiff had purchased from the defendant, the trial judge properly allowed plaintiff to recover the reasonable value of all medical expenses incurred by plaintiff which were rendered worthless by defendant's tortious conduct.

**14. Damages § 11.2— assault, battery, and destruction of personal property—failure to submit issue of punitive damages proper**

In a medical malpractice action where defendant psychiatrist counterclaimed for assault, battery, and destruction of personal property, the trial judge properly failed to submit an issue of punitive damages on defendant's counterclaim in light of the undeniable evidence of the defendant's provoking conduct.

APPEAL by defendants from *Bailey, Judge.* Judgment entered 10 June 1981 in Superior Court, ORANGE County. Heard in the Court of Appeals on 31 August 1982.

This appeal arose from plaintiff's action to recover damages from defendants Robert A. Huffaker and Robert A. Huffaker, M.D., P.A., on the grounds of negligence, and from defendant Robert A. Huffaker on the grounds of criminal conversation, and alienation of affections. Defendant counterclaimed, seeking damages from plaintiff for assault, battery, and destruction of personal property. Upon a trial by jury, a verdict was returned containing the following issues and answers:

1. Did the Defendant, Robert A. Huffaker, have criminal conversation with the Plaintiff's wife?

ANSWER: Yes.

2. What amount, if any, is due and owing the Plaintiff due to the Defendant's criminal conversation with the Plaintiff's wife?

ANSWER: $50,670.00.

3. Did the Defendant, Robert A. Huffaker, alienate the affections of the Plaintiff's wife?

ANSWER: No.

. . .

5. Did the Defendants, Robert A. Huffaker and Robert A. Huffaker, M.D., P.A. commit medical malpractice on their treatment of the Plaintiff?

ANSWER: Yes.

6. What amount, if any, is due to the Plaintiff due to the malpractice by the Defendants upon the Plaintiff?

ANSWER: $102,000.00.

. . .

7. What amount, if any, is the Plaintiff entitled to recover from the Defendants for punitive damages for

. . .

(c) Medical malpractice: $500,000.00

8. Was Defendant, Robert A. Huffaker, injured and damaged by the Plaintiff?

ANSWER: Yes.

9. What amount, if any, is Defendant, Robert A. Huffaker, entitled to recover for

(a) Personal injury: $3,000.00

(b) Property damage: $85.00

The Court entered judgment upon such verdict, setting defendant Huffaker's $3,085 counterclaim recovery off against plaintiff's $50,670 criminal conversation recovery, for a net recovery of $47,585 on the criminal conversation verdict; the court further ad-

judged that plaintiff recover from defendants $102,000 in compensatory damages and $500,000 in punitive damages on the medical malpractice verdict. Defendants appealed.

*Boyce, Morgan, Mitchell, Burns & Smith, by G. Eugene Boyce and James M. Day, and Midgette, Higgins, Lembo & Graves, by Thomas D. Higgins III, for plaintiff, appellee.*

*Young, Moore, Henderson & Alvis, by Beth R. Fleishman and Jerry S. Alvis, for defendant, appellants.*

HEDRICK, Judge.

Defendant's first assignment of error brought forth in his brief is that "[t]he court erred in denying defendants' motions for directed verdict and judgment notwithstanding [the] verdict on the malpractice claim for reason that no act of professional malpractice was shown by plaintiff's evidence."

In passing upon a defendant's motion for directed verdict, the plaintiff's "evidence must be taken as true, . . . and [the motion] may be granted only if, as a matter of law, the evidence is insufficient to justify a verdict for the plaintiffs." *Dickinson v. Pake*, 284 N.C. 576, 583, 201 S.E. 2d 897, 902 (1974). "In a negligence case, '[i]f the evidence in the light most favorable to the plaintiff, giving him the benefit of all permissible inferences from it, tends to support all essential elements of actionable negligence, then it is sufficient to survive the motion . . . [for directed verdict].' " *Hunt v. Montgomery Ward and Co.*, 49 N.C. App. 642, 645, 272 S.E. 2d 357, 360 (1980) (citation omitted). In addition to the rule giving the plaintiff the benefit of the doubt on a motion for nonsuit, "judicial caution is particularly called for in actions alleging negligence as a basis for recovery." *Smithers v. Collins*, 52 N.C. App. 255, 260, 278 S.E. 2d 286, 289 (1981) (citations omitted). In passing on a motion for judgment notwithstanding the verdict, the court employs the same standards as are used in passing on a motion for directed verdict. *Kaperonis v. Underwriters*, 25 N.C. App. 119, 212 S.E. 2d 532 (1975).

In actions for damages for personal injury arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care, the health care provider's liability is conditioned on proof by the plaintiff "that

the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action." N.C. Gen. Stat. § 90-21.12. A showing that the health care provider violated such standards of practice satisfies plaintiff's burden on the professional malpractice element of his claim.

> Usually [the question of] what is the standard of care required of a physician or surgeon is one concerning highly specialized knowledge with respect to which a layman can have no reliable information. As to this, both the court and jury must be dependent on expert testimony. Ordinarily there can be no other guide.

*Jackson v. Sanitarium,* 234 N.C. 222, 226-227, 67 S.E. 2d 57, 61 (1951).

In the present case, plaintiff presented evidence tending to show the following:

Plaintiff suffers from manic depressive psychosis. Since 1975, he had received ongoing treatment of his illness from defendant Huffaker, a psychiatrist. As part of his treatment, plaintiff was prescribed medication by defendant Huffaker and participated in frequent and regular sessions at Huffaker's office, during which plaintiff was encouraged to have very intimate, self-revelatory, and uninhibited discussions with Huffaker. The treatment was described as "insight therapy" and "psychoanalysis." Plaintiff, in many of his sessions, for example, one on 4 May 1979, expressed to Huffaker serious concern about maintaining a healthy marital relationship with his wife, Jacqueline Mazza. Plaintiff had come to think of defendant Huffaker as his best friend. In May 1979, Jacqueline requested that she and plaintiff separate, and on 28 May 1979, plaintiff moved out of the Woodhaven Road house, in Chapel Hill, in which he, his wife, and family had lived. On 6 July 1979, plaintiff was entertaining one of his and Jacqueline's sons, with her prior agreement. Upon calling his wife at the Woodhaven Road home, at 10:40 p.m., to check with her as to whether he could bring the son back to her the next morning, plaintiff became concerned about his wife's welfare after noticing her conduct over the telephone. Plaintiff thereupon drove over to the

Woodhaven Road house "to make sure everything was okay." Plaintiff observed his psychiatrist's automobile parked near the Woodhaven Road house and saw some of his psychiatrist's clothing strewn about the family room. Upon approaching and entering the locked master bedroom, plaintiff discovered his psychiatrist, Robert Huffaker, and his wife, Jacqueline Mazza, together in bed. Huffaker was naked and putting on his undershorts, and Jacqueline was naked and putting on a light housecoat.

Plaintiff also presented expert testimony tending to show the following:

Psychiatrists are physicians. The first duty of a physician to a patient is to do no harm; the second is to maintain the patient's trust and confidence in the physician. These basic duties apply and are even more stringent with psychiatrists, since a psychiatrist's patient reveals his innermost thoughts, feelings, worries, and concerns. Psychiatrists, therefore, have a strict duty not to breach the trusting relationship and must be very careful about what they say and how they influence patients. Psychiatrists have to take great care in the termination of a relationship with a patient so that the psychiatric patient, who is very sensitive, does not feel that he is abandoned or rejected. Especially in light of the intimate relationship between psychiatrist and patient, the psychiatrist's duty once the psychiatrist-patient relationship has been established extends beyond the hospital or consulting room and includes social situations. The psychiatrist must endeavor to assure that the patient does not forget that the doctor is a doctor. A patient can be seriously harmed if the relationship changes from a therapeutic one to a social one. Special duties exist in the practice of medicine not to ruin a doctor and patient relationship, and those duties are more critical in psychiatry than in other areas of medicine. If the relationships are not terminated properly, but too abruptly, great harm can result to a patient. The psychiatrist's duty to advance his patient's interests is violated if the psychiatrist has sex with the patient's spouse; such sexual relations are not therapeutic. Sexual relations between a psychiatrist and his patient's wife would destroy the patient's trust in the psychiatrist and would destroy the doctor-patient relationship. Covert sexual relations between a psychiatrist and a patient's wife, if discovered by the

patient, would make it extremely difficult for the patient to establish ever again a necessary trusting relationship with any psychiatrist, would render previous treatment useless, and would do harm to the mental well-being of the patient. A psychiatrist who becomes sexually involved with a relative of a patient is not exercising the requisite amount of skill, learning, and ability that a psychiatrist in any community in the United States ought to exercise. All the aforementioned standards and duties of physicians and psychiatrists are applicable in Chapel Hill.

[1]   There is ample evidence in the present case that the relevant standard of care applicable to Chapel Hill psychiatrists included the negative imperative that they not have sexual relations with their patients' spouses. The expert testimony tended to establish an obligation on the part of psychiatrists, as a part of their duties within the patient-psychiatrist relationship, to conduct themselves in a certain way and this obligation applies even beyond the office, clinic, hospital, or laboratory.

There was abundant evidence that defendant Huffaker did not refrain from having sexual relations with the plaintiff's wife. Hence, there was expert evidence defining the applicable standard of care and evidence that defendant Huffaker violated such standard. Contrary to defendants' assertions, plaintiff thus presented sufficient evidence of the professional malpractice element of his claim.

Defendants, however, object in portions of their brief to the judicial deference accorded expert testimony on the standard of care. Defendants suggest that, notwithstanding expert testimony, defendant Huffaker's conduct was not, as a matter of law, malpractice. There may well be some instances in which (1) expert testimony established that certain conduct on the part of a physician is either required or prohibited by the applicable standard of care, and (2) other evidence shows noncompliance by the defendant with such a standard and yet the court nevertheless regards such evidence as insufficient as a matter of law to support a verdict of malpractice. Such an instance would represent a ruling by the court that the standards testified to by the expert were in excess of what the law requires. In the present case, however, we believe that the expert testimony on the applicable standard of care and the other evidence showing a departure therefrom were

sufficient to permit the jury to pass upon the issue of whether malpractice occurred. We are not prepared to rule *as a matter of law* that the expert testimony proscribing sexual relations between a psychiatrist and his patient's wife was a too-burdensome or otherwise incorrect statement of the standard of care applicable to psychiatrists. *See Jackson v. Sanitarium,* 234 N.C. 222, 67 S.E. 2d 57 (1951); *Smithers v. Collins,* 52 N.C. App. 255, 278 S.E. 2d 286 (1981). Defendants' first assignment of error is overruled.

In their next six assignments of error, defendants challenge instructions given by the court about conduct upon which the jury could base a finding of malpractice. In each assignment of error, defendants challenge a particular instruction on the ground that the evidence was insufficient to permit the giving of such instruction. An instruction relating to a factual situation not properly supported by the evidence is erroneous. Conversely, the court has a duty to declare and explain the law as it relates to those factual situations for which there is evidentiary support. *Foods, Inc. v. Super Markets,* 288 N.C. 213, 217 S.E. 2d 566 (1975). Further,

> the court's charge must be considered contextually as a whole, and when so considered, if it presents the law of the case in such a manner as to leave no reasonable cause to believe the jury was misled or misinformed, this Court will not sustain an exception on the grounds that the instruction might have been better.

*Hanks v. Insurance Co.,* 47 N.C. App. 393, 404, 267 S.E. 2d 409, 415 (1980) (citations omitted).

[2] Defendants first challenge the court's instruction that the jury must find there was malpractice if it found that defendant Huffaker "abandoned Dr. Mazza as a patient." Defendant contends there was no "evidence of abandonment." There was, however, evidence in the present case that while the psychiatrist-patient relationship existed between defendant and plaintiff, defendant Huffaker had sexual relations with plaintiff's wife and in so doing acted in violation of the standard of care required of a psychiatrist. This evidence would suffice to permit the jury to find that defendant Huffaker has abruptly abandoned his patient, Dr. Mazza, and was acting as if there had been no psychiatrist-

patient relationship with Dr. Mazza. The instruction on abandonment was not improper, and this assignment of error is not sustained. The above-mentioned evidence and expert testimony about the requirement of trust in a psychiatrist-patient relationship were also sufficient to permit the court to give the instruction next assigned as error, wherein the court stated the jury must find malpractice if it found defendant Huffaker "used his position of trust and confidence to harm his patient."

[3] Defendant next challenges the court's instruction that the jury must find malpractice if it determined defendant Huffaker "failed to use that degree of professional learning, skill and ability which others similarly situated ordinarily possess." Under this assignment of error, defendants contend the court did not provide sufficiently elaborate instructions as to what evidence there was of the applicable standard of care, and as to what could be considered as evidence of violations by defendant Huffaker of the standard of care. Hence, defendant argues, the jury could have found defendant Huffaker liable for malpractice on the basis of conduct wholly unrelated to anything testified to at trial. We disagree. First, the instructions sufficiently apprised the jury of what evidence it should consider with respect to the applicable standard of care when the court specifically referred the jury to the testimony given by the expert witnesses on the standard of care. Secondly, the court provided the jury with sufficient guidance as to what evidence could permissibly be considered as conduct constituting malpractice, in that the instructions on the malpractice issue pointed out no malpractice could be found if the jury determined the psychiatrist-patient relationship between defendant Huffaker and plaintiff had terminated prior to any sexual or social contact between defendant Huffaker and plaintiff's wife. These instructions adequately directed the jury's attention to the evidence of defendant Huffaker's relations with plaintiff's wife as the relevant conduct to be considered on the malpractice issue. This assignment of error has no merit.

[4] Next defendant argues the court erred in instructing the jury that it should find malpractice if it determined defendant Huffaker "continued to treat Dr. Mazza after becoming emotionally and sexually involved with Dr. Mazza's wife." Defendants contend that such a determination could not be a basis for a verdict finding medical malpractice, since the existence of a psychiatrist-

patient relationship between defendant Huffaker and plaintiff, at the time defendant Huffaker and plaintiff's wife were discovered in bed together by plaintiff, would not affect the character of the legal wrong done plaintiff. Defendants argue that such legal wrong would be the same as if there had been no psychiatrist-patient relationship at the time of the discovery, and the legal wrong would not be malpractice but would be criminal conversation or alienation of affections, if anything. Expert testimony in the present case, however, asserted that the existence of the psychiatrist-patient relationship is not irrelevant or superfluous, since sexual relations between a psychiatrist and his patient's wife during the term of the psychiatrist-patient relationship is a violation of the applicable standard of care for psychiatrists. This testimony sufficed to permit the court to issue the challenged instruction as a basis for malpractice. The assignment of error is overruled.

[5] Defendants next assign error to the court's instruction that the jury must find malpractice if it determined that defendant Huffaker "failed to recognize and guard against the transfer or counter-transference phenomenon." According to expert testimony, transference is a common phenomenon in psychiatric therapy in which the psychiatric patient transfers onto the psychiatrist emotions the patient has towards someone else. Counter-transference is a similarly common phenomenon in which the psychiatrist projects onto his patient feelings that the psychiatrist has towards someone else. Defendants first contend there was no evidence that defendant Huffaker failed to recognize and respond correctly to transference and counter-transference between Jacqueline Mazza, whom he was treating as a patient, and himself. Defendants contend secondly that even if there were such evidence, defendant Huffaker's improper response to transference or counter-transference would be the basis of a malpractice action only on behalf of Jacqueline Mazza, if anyone, and not on behalf of plaintiff.

The evidence and instructions in the present case placed central focus on the sexual relations between defendant Huffaker and the plaintiff's wife during the term of Huffaker's and plaintiff's psychiatrist-patient relationship. In light of that central focus, the instruction challenged here must also be deemed to pertain to the sexual relations between defendant Huffaker and the plaintiff's

wife, with the added issues of transference and counter-transference. Hence, if the jury based its finding of malpractice on the instruction that it find malpractice if it determined defendant Huffaker reacted improperly to transference or counter-transference, then the jury necessarily found that defendant Huffaker had sexual relations with plaintiff's wife during the course of the psychiatrist-patient relationship, since such sexual relations are of what the improper reaction to transference or counter-transference consisted. This assignment of error is meritless.

[6] In their final assignment of error directed to the court's charge to the jury on liability, defendants challenge the court's instructions that the jury must find malpractice if it found defendant Huffaker abandoned plaintiff as a patient or if it found defendant Huffaker continued to treat plaintiff after becoming emotionally and sexually involved with plaintiff's wife. Defendants contend this charge "was tantamount to a virtual peremptory instruction on the malpractice issue" in that it compelled the jury to find malpractice by requiring it to do so whether it found one set of facts as true or whether it found the opposite set of facts as true. The court's instructions on abandonment and continued treatment do not pose a situation in which the jury must find malpractice if it finds that either of two mutually exclusive events occurred. The two prongs of the challenged instruction do not call for opposite determinations by the jury; rather, each may be answered in the affirmative since each deals with defendant Huffaker's having sexual relations with plaintiff's wife prior to an appropriate, gradual, and careful cessation of the psychiatrist-patient relationship between defendant Huffaker and plaintiff. The jury would have to find that the same essential set of facts occurred to answer either prong in the affirmative, and that set of facts, i.e. Huffaker's sexual relations with plaintiff's wife on 6 July 1979, sufficed as a predicate for malpractice liability. This assignment of error is without merit.

[7] Defendants next assign error to the court's failure to submit an issue of plaintiff's contributory negligence with respect to the malpractice claim. Defendants first contend there was sufficient evidence to warrant the submission of such issue because of evidence that (1) prior to discovering his wife and defendant in bed together on 6 July 1979, plaintiff suspected the two were hav-

ing an affair, (2) prior to his breaking down the door of the bedroom occupied by the two on 6 July 1979, plaintiff was aware of the possibility defendant Huffaker was in the house with plaintiff's wife, since plaintiff had seen Huffaker's clothing in the family room and his automobile parked nearby, and (3) plaintiff was sufficiently informed about his psychological vulnerabilities to have reason to know he would be very distressed if he were to see his wife and his psychiatrist in bed together. Defendants contend this evidence shows that plaintiff, in entering the bedroom, did not exercise ordinary care for his own safety in light of a foreseeable danger and unreasonable risk and that his conduct contributed to his injury. Defendants also contend the issue of contributory negligence should have been submitted on the basis of evidence tending to show that plaintiff had led defendant Huffaker to believe their psychiatrist-patient relationship was terminated.

We have carefully perused the record in light of defendants' imaginative contentions with respect to an issue of contributory negligence and conclude the trial court did not err in failing to submit such an issue. We can hardly perceive of a situation where an issue of contributory negligence would be less appropriate.

[8] Defendants next assign error to the admission of expert testimony that sexual relations between a psychiatrist and the wife of a patient would render useless previous treatment of the patient by the psychiatrist and would make it extremely difficult for the patient to enter ever again into a trusting relationship with any other psychiatrist. Defendants contend this expert testimony failed to comply with the requirement that expert opinion evidence be in response to hypothetical questions which incorporate all the relevant underlying facts upon which the opinion is to be based. The fatal omission, according to defendants, is a specific reference to Dr. Huffaker, rather than "a psychiatrist" and to Dr. Mazza instead of "a patient." Defendants argue that the testimony was inadmissible because it was in the abstract, rather than being particularized to deal with the specific *dramatis personae* in this case. The testimony, however, about what sexual relations between "a psychiatrist" and his patient's wife would do to his "patient" necessarily covered the situation in the present case, since defendant Huffaker was "a psychiatrist," and plaintiff was "a patient" of Huffaker's. The evil posed by improperly ad-

mitted expert opinion is the possibility that it could be based on factual premises different from those presented at trial and that such expert opinion, coming from highly regarded witnesses, could have undue influence on the jury on an issue with which the expert testimony really does not deal. *See* 1 BRANDIS ON NORTH CAROLINA EVIDENCE § 123 (2d Rev. Ed. 1982). In the present case, however, there is no possibility that the challenged expert testimony misled the jury into trusting the experts' conclusions as relevant when such conclusions actually dealt with different premises and a different issue. The testimony challenged here deals directly with the situation presented by the evidence, and thus its admission to show that defendant Huffaker's conduct rendered useless his previous treatment of plaintiff, was not improper. Other testimony about possible adverse consequences to "a patient" upon certain acts or omissions of "a psychiatrist" (e.g. the toxic effect upon a manic depressive patient when he gets too much lithium) was admitted more as general background information about a psychiatrist's standard of care than as pertaining to the specific injuries incurred by plaintiff in the present case, and the jury would have so understood, particularly in light of the court's not instructing on such injuries. The exclusion of such testimony would not likely have produced a different result at trial, and its admission, if erroneous, is not grounds for reversal. This assignment of error is overruled.

[9]  In their next assignment of error, defendants argue, "[t]he Court erred in permitting the [expert] witnesses . . . to express their opinions as to professional ethics for reason that breaches of professional ethics are not civilly actionable as malpractice, and this error . . . permitted . . . [the jury] to impose liability upon defendants for a breach of professional ethics."

As previously discussed, the professional malpractice element of an actionable malpractice claim is satisfied if it is shown that the health care provider violated the relevant standard of practice for his profession, and such standard of practice may be supplied by expert testimony. In the present case, expert testimony supplied such standard of practice and equated it with the standards of professional ethics. According to such expert testimony, the accepted standards of care are coterminous with the relevant standards of professional ethics. Hence, it was not improper for the expert witnesses to give content to the accepted standards of

care by referring to the ethical standards of the profession, since expert testimony asserted that both standards are the same. Although defendants may be correct in arguing that breaches of professional ethics are not actionable in a malpractice suit when such standards differ from the reasonable standard of care imposed by tort law, their argument is unavailing in the present case, where expert testimony equated the two sets of standards. This assignment of error is overruled.

[10] Defendants also assign error to the court's submission of an issue of punitive damages. Defendants contend there was insufficient evidence to warrant submission of such issue.

> In jury trials the usual rules governing motions for a directed verdict apply when there is such a motion as to a claim for punitive damages on the grounds of insufficiency of evidence, and the trial judge must determine as a matter of law whether the evidence when considered in the light most favorable to plaintiff is sufficient to carry the issue of punitive damages to the jury.

*Shugar v. Guill*, 304 N.C. 332, 339, 283 S.E. 2d 507, 511 (1981) (citations omitted). The purpose of assessing punitive damages is "to punish a defendant for his wrongful acts and to deter others from committing similar acts." 304 N.C. at 335, 283 S.E. 2d at 509. Since the malpractice liability found by the jury in the present case is based on defendant Huffaker's breach of the accepted standards of care for psychiatrists, the following excerpt on punitive damages in negligence actions is relevant:

> References to *gross* negligence as a basis for recovery of punitive damages may be found in our decisions. . . .

> An analysis of our decisions impels the conclusion that this Court, in references to gross negligence, has used that term in the sense of wanton conduct. Negligence, a failure to use due care, be it slight or extreme, connotes inadvertence. Wantonness, on the other hand, connotes intentional wrongdoing. Where malicious or wilful injury is not involved, wanton conduct must be alleged and shown to warrant the recovery of punitive damages. Conduct is wanton when in conscious and intentional disregard of and indifference to the rights and safety of others.

*Hinson v. Dawson*, 244 N.C. 23, 27-28, 92 S.E. 2d 393, 396-97 (1956) (emphasis in original) (citations omitted).

The evidence in the present case, taken in the light most favorable to plaintiff, tends to show that on 6 July 1979 defendant Huffaker proceeded to have sexual relations with his patient's wife despite an awareness of the special vulnerabilities of his patient if the patient were to discover such a rendezvous. Evidence of such conduct by a psychiatrist towards his patient, in the face of the trusting relationship which develops between psychiatrist and patient, is evidence of more than mere inadvertence on the part of the psychiatrist. The evidence tends to show a wilful act by defendant Huffaker of having sex with his patient's wife, and an awareness, although disregarded, of the risks such an act posed towards his patient, Dr. Mazza. This evidence was sufficient to support an inference by the jury that defendant Huffaker acted with conscious disregard of the mental well-being of Dr. Mazza, the very mental well-being with which defendant Huffaker had been entrusted. Hence, the evidence was sufficient to support submission of a punitive damage issue in the medical malpractice case. The case of *Shugar v. Guill*, 304 N.C. 332, 283 S.E. 2d 507 (1981), wherein our Supreme Court held that the plaintiff was not entitled to submission of a punitive damage issue against the defendant, who intentionally struck plaintiff in the face and thereby broke his nose and caused it to bleed profusely, is distinguishable. There, the court pointed to the plaintiff's provoking conduct and indicated that such conduct can so mitigate the defendant's tort as to preclude a punitive damages issue against the defendant. In the present case, there was no such provoking conduct by plaintiff, Dr. Mazza, which would be in mitigation of the tortious act of defendant Huffaker's having sex with his patient's wife. This assignment of error is overruled.

[11] Defendants also assign error to the court's instructions permitting the jury to consider, in its computation of damages, plaintiff's permanent pain and suffering and his prospective income loss. With respect to the court's instructions on permanency and future pain and suffering, defendant contends there was none of the required expert testimony necessary to warrant instructions on such items of damage, particularly the permanency aspect. There was, however, competent expert testimony tending to show that a patient who discovered his wife in bed with his psychiatrist

would *never again* be able to form the trusting relationship with a psychiatrist which is necessary for psychiatric treatment, and that such a discovery would harm the mental well-being of a patient. This evidence, in conjunction with evidence that plaintiff is a manic depressive requiring psychiatric care and that he constantly relives the 6 July 1979 discovery and that it impairs his concentration and deprives him of sleep, is sufficient to permit the jury to infer with reasonable certainty that defendant Huffaker's tortious act will cause plaintiff pain and suffering of a permanent nature. Hence, the court's instructions on plaintiff's future pain and suffering of a possibly permanent nature were not improper. *See Mitchem v. Sims*, 55 N.C. App. 459, 285 S.E. 2d 839 (1982). *See generally, Kimberly v. Howland*, 143 N.C. 399, 55 S.E. 778 (1906); *Crews v. Finance Company*, 271 N.C. 684, 157 S.E. 2d 381 (1967); *Sparks v. Products Corp.*, 212 N.C. 211, 193 S.E. 31 (1937). *Compare McDowell v. Davis*, 33 N.C. App. 529, 235 S.E. 2d 896 (1977).

[12]  Similarly, there was sufficient evidence to warrant an instruction on plaintiff's prospective losses in income. Defendants erroneously contend that with respect to plaintiff's diminished earning capacity, there was insufficient evidence to allow the jury to do anything other than speculate. The evidence of plaintiff's profession, age, and life expectancy, the aforementioned evidence about the permanent effect of plaintiff's injury, the concomitant impairment of his ability to concentrate and to sleep, testimony about plaintiff's annual gross income from 1976 through May 1981, and testimony that the 6 July 1979 incident had a deleterious effect on plaintiff's dental practice, academic work and clinical skills present a sufficient basis to allow the jury to draw an inference as to the amount of money necessary to compensate him for reduced earning capacity. Defendants' exceptions pertaining to future pain and suffering and prospective income loss are overruled.

[13]  Defendants next assign error to a portion of the court's instructions on recoverable compensatory damages for plaintiff's past medical expenses. The pertinent challenged instructions are as follows:

>      A person who suffers personal injury proximately caused
> by the negligence of another is entitled to recover in a lump

sum the present worth of all damages past, present and future which naturally and proximately result from that negligence. Such damages include medical expenses . . .

Medical expenses would include the actual amount which you find by the greater weight of the evidence has been paid or incurred or rendered worthless by the . . . defendant as a proximate result of the defendant's negligence. You may consider hospital bills, doctors' bills and drug bills and any other medical expenses that you find to have existed.

The court also instructed:

In this case Dr. Mazza contends that he has expended in past medical expenses prior to this matter the sum of approximately $17,000 for the treatment of himself and of his wife; and he contends among other things that he is entitled to recover this. That the value of that treatment having been destroyed by the alleged acts of Dr. Huffaker.

The "approximately $17,000" referred to in the court's instructions pertain to the treatment fee paid by plaintiff to defendant Huffaker from 1975 through 1979 for psychiatric services rendered by defendant Huffaker. This treatment was received and the fees therefor were incurred by plaintiff prior to his discovery of the rendezvous between his wife and defendant Huffaker.

"[C]ompensatory damages are allowed as indemnity to the person who suffers loss, in satisfaction and recompense for the loss sustained." *Bowen v. Bank*, 209 N.C. 140, 144, 183 S.E. 266, 268 (1936). The purpose of the law in allowing such damages "is to place the party as near as may be in the condition which he would have occupied had he not suffered the injury complained of." *Id.* In a malpractice action, plaintiff is "entitled to recover compensation only for those injuries which proximately resulted from defendant's negligent treatment." *Payne v. Stanton*, 211 N.C. 43, 45, 188 S.E. 629, 630 (1936).

In the present case, the defendant can hardly argue that his services to the plaintiff were not worth the fees paid. At the time of the tort, the plaintiff's mental condition reflected the benefit of the defendant's professional services. However, by his wrongful conduct, the defendant destroyed whatever benefits the plaintiff

had purchased from the defendant for $17,000.00. We agree with the trial judge that the plaintiff is entitled to recover the reasonable value of all medical expenses incurred by plaintiff which were rendered worthless by defendant's tortious conduct. This assignment of error is not sustained.

Defendants have additional assignments of error relating to the instructions to the jury on damages, which we have carefully reviewed. We realize that the instructions deviate in some respects from the approved instructions on damages in the usual personal injury case; however, we find that under the unusual circumstances of this case, that when the instructions with respect to both compensatory and punitive damages are considered contextually as a whole, the charge is free from prejudicial error.

[14]   Finally, defendants assign error to the court's failure to submit an issue of punitive damages to be assessed against plaintiff for his liability in defendant Huffaker's counterclaim for assault, battery, and destruction of personal property. If there is sufficient evidence from which the jury may reasonably infer that the wrongdoer's actions were activated by personal ill will toward the victim or that his acts were aggravated by oppression, insult, rudeness, or a wanton and reckless disregard of plaintiff's rights, the issue of punitive damages should be submitted to the jury. *See Shugar v. Guill*, 304 N.C. 332, 283 S.E. 2d 507 (1981); *Hardy v. Toler*, 288 N.C. 303, 218 S.E. 2d 342 (1975). The evidence of plaintiff's acts, considered in the light most favorable to the counterclaiming defendant, is as follows: Upon discovering his wife and Huffaker in bed together on 6 July 1979, plaintiff aimed a loaded shotgun at Huffaker and fired the gun over Huffaker's head, just missing Huffaker. Plaintiff and Huffaker then wrestled and during that affray plaintiff tried to gouge out both of Huffaker's eyeballs and thereby bruised them. Upon his release from North Carolina Memorial Hospital on 10 July 1979, plaintiff located defendant Huffaker's automobile and slashed two of its tires with a pocketknife and removed from the automobile Huffaker's briefcase and suitcase. Evidence that plaintiff assaulted Huffaker with a deadly weapon or inflicted or attempted to inflict serious bodily injury upon Huffaker, insofar as it is evidence of an aggravated criminal assault under N.C. Gen. Stat. § 14-33, would ordinarily require submission to the jury of an issue of punitive damages in defendant Huffaker's counterclaim against plaintiff.

*Carawan v. Tate*, 53 N.C. App. 161, 280 S.E. 2d 528 (1981), *modified and aff'd*, 304 N.C. 696, 286 S.E. 2d 99 (1982); *Worthy v. Knight*, 210 N.C. 498, 187 S.E. 771 (1936).

However, we hold as a matter of law that the trial judge correctly refused to submit an issue of punitive damage on defendant's counterclaim, in light of the undeniable evidence of Huffaker's provoking conduct. *Shugar v. Guill*, 304 N.C. 332, 283 S.E. 2d 507 (1981).

Defendants have not brought forward and argued any assignments of error relating to the judgment for criminal conversation, and we have held there was no error in the case relating to the defendants' counterclaim against the plaintiff, and we have also held there was no error in plaintiff's claim against the defendants for psychiatric malpractice, thus the judgment will be affirmed in all respects.

No error.

Judges ARNOLD and WELLS concur.