RUBY DEATON PHARR, Plaintiff v. JOYCE W. BECK, Defendant

No. COA01-3

(Filed 20 November 2001)

**1. Alienation of Affections— postseparation conduct— corroboration**

   An alienation of affections claim must be based on preseparation conduct and postseparation conduct is admissible only to

PHARR v. BECK

[147 N.C. App. 268 (2001)]

the extent it corroborates preseparation activities resulting in the alienation of affection.

## 2. Alienation of Affections— malicious acts—sufficiency of evidence

The trial court did not err in an alienation of affections case by denying defendant's motion for directed verdict and judgment notwithstanding the verdict based on substantial evidence of defendant's malicious acts producing a loss of affection for plaintiff by plaintiff's husband, because: (1) the preseparation evidence reveals that defendant engaged in intentional conduct that affected plaintiff's marital relationship, and this conduct was the effective cause of plaintiff's husband losing love and affection for plaintiff; and (2) evidence of the postseparation sexual intercourse between defendant and plaintiff's husband corroborates the preseparation relationship between the parties.

Appeal by defendant from judgment filed 18 August 2000 by Judge Raymond A. Warren in Burke County Superior Court. Heard in the Court of Appeals 16 October 2001.

*Potter & McCarl, P.A., by Lucy R. McCarl, for plaintiff-appellee.*

*The Law Firm of J. Richardson Rudisill, Jr., by John M. Lewis, for defendant-appellant.*

GREENE, Judge.

Joyce W. Beck (Defendant) appeals a judgment filed 18 August 2000 pursuant to a jury verdict awarding damages to Ruby Deaton Pharr (Plaintiff) in the amount of $86,250.00 for Defendant's alienation of the affection of Plaintiff's husband Walter Pharr (Pharr) and $15,000.00 for criminal conversation with Pharr. Defendant's assignments of error, however, only relate to the alienation of affection claim.

On 11 September 1998, Plaintiff filed a complaint against Defendant for alienation of affection and criminal conversation. The evidence at trial, construed in the light most favorable to Plaintiff, *Meacham v. Bd. of Educ.*, 59 N.C. App. 381, 383, 297 S.E.2d 192, 194 (1982) (delineating standard of review for directed verdict motion), established Plaintiff and Pharr were married for approximately ten years when Defendant and Pharr became acquainted in the early 1990's. Defendant, who worked at the same company as Pharr and

shared Pharr's passion for running, had approached and asked Pharr if he would like to run and train with her. By June of 1992, Pharr ran almost daily, oftentimes with Defendant. Plaintiff supported Pharr's hobby and liked to accompany him when he competed in races.

In 1993, after competing in a race, Pharr suffered a heart attack. Defendant, who was with him at the time, notified Plaintiff and then drove her to the hospital. At the hospital, Defendant followed Plaintiff into the intensive care unit and held Pharr's hand. When Pharr was subsequently transferred to a different hospital, he insisted Plaintiff let Defendant know. Pharr's hospital stay lasted two weeks, and during that time Defendant visited Pharr on both weekends, bringing him a gift on one occasion. This was one of several gifts Defendant gave Pharr over the course of time.

Despite a doctor's warning not to run again for a while, Pharr resumed his running routine with Defendant just two days after his release from the hospital. Pharr stopped telling Plaintiff where he would be running and also discouraged Plaintiff from attending his races. Sometime later in 1993, Plaintiff felt the relationship between Pharr and Defendant was getting out of hand. Pharr seemed to spend more time alone with Defendant than he did with Plaintiff, and when Pharr was at home, he would constantly talk about Defendant. Plaintiff also worried about the looks Defendant gave Pharr, which to Plaintiff indicated more than friendship. Plaintiff confronted Pharr about his relationship with Defendant, and Pharr, after an initial display of indignation, promised to spend less time with Defendant.

Nevertheless, Pharr and Defendant continued running together and, beginning in 1996, Pharr and Defendant ate lunch together on a regular basis. In April 1996, Pharr told Plaintiff he was unhappy and wanted to move out. Pharr, however, continued to live with Plaintiff until 8 June 1996, when Pharr and Plaintiff separated. During the six-week period Pharr remained in the marital home (just prior to his separation from Plaintiff), Plaintiff discovered Defendant had given Pharr a phone card along with a piece of paper containing Defendant's telephone number and instructions on how to call her long distance while Pharr and Plaintiff were on vacation. With Defendant's permission, Pharr also began using Defendant's post office box. The month prior to Pharr's separation from Plaintiff, Pharr spent many evenings remodeling Defendant's home, which also became his home sometime after the separation.

Deborah Coffee (Coffee), a nurse whom Plaintiff had employed to care for her parents, testified she had seen Defendant and Pharr running together on numerous occasions before 8 June 1996 and that they "looked affectionate at times." She had also observed them "hugged up" on one occasion prior to the date of separation. Lester Beck (Beck), who was married to Defendant during the period covered by his testimony, testified that, in April 1994, he came home unexpectedly to find the back door locked. When Defendant opened the door for him, he saw Pharr coming from the bedroom area where Beck later noticed two mixed drinks on the night stand. Pharr apologized to Beck and Defendant offered to move out of the home. Defendant admitted to having had sexual intercourse with Pharr in December 1996, some six months after Pharr and Plaintiff separated.

Defendant moved for a directed verdict at the close of Plaintiff's evidence and at the close of all the evidence and for a judgment notwithstanding the verdict after return of a jury verdict in Plaintiff's favor. The trial court denied the motions and entered a judgment in the amount of $101,250.00.

The issues are whether: (I) evidence of post-separation activities between Pharr and Defendant is relevant to Plaintiff's alienation of affection claim; and (II) there is substantial evidence Defendant's malicious acts produced a loss of Pharr's affection for Plaintiff.

A claim for alienation of affection requires proof of three elements: (1) there was a marriage with love and affection existing between the husband and wife; (2) that love and affection was alienated;[1] and (3) the malicious acts of the defendant produced the loss of that love and affection. *Gray v. Hoover*, 94 N.C. App. 724, 727, 381 S.E.2d 472, 473, *disc. review denied*, 325 N.C. 545, 385 S.E.2d 498 (1989). Defendant, in her brief to this Court, admits Plaintiff presented substantial evidence of the first two elements of the tort of alienation of affection but argues Plaintiff failed to present sufficient evidence that "Defendant committed 'malicious conduct' which caused the alienation of affections of Plaintiff's spouse." Accordingly, we address only the sufficiency of the evidence with respect to the third element, which has two parts: malice and proximate cause.

---

1. Alienation occurs if a spouse's affection for the other spouse is destroyed or diminished. *Darnell v. Rupplin*, 91 N.C. App. 349, 350, 371 S.E.2d 743, 744 (1988).

PHARR v. BECK

[147 N.C. App. 268 (2001)]

*Malicious act*

A malicious act, in the context of an alienation of affection claim, has been loosely defined to include any intentional conduct[2] that "would probably affect the marital relationship." 1 Suzanne Reynolds, *Lee's North Carolina Family Law* § 5.46(A), at 395 (5th ed. 1993) [hereinafter 1 Reynolds]; *see Heist v. Heist*, 46 N.C. App. 521, 523, 265 S.E.2d 434, 436 (1980) ("unjustifiable conduct causing the injury complained of"); *see also Sebastian v. Kluttz*, 6 N.C. App. 201, 206, 170 S.E.2d 104, 106 (1969) ("a reckless indifference to the rights of others"). Malice is conclusively presumed upon a showing the defendant has engaged in sexual intercourse with the alienated spouse. *Bishop v. Glazener*, 245 N.C. 592, 596, 96 S.E.2d 870, 873 (1957); 41 Am. Jur. 2d *Husband and Wife* § 466 (1968).

*Proximate cause*

A defendant's malicious conduct also must have proximately caused the alienation of the spouse's love and affection for the plaintiff spouse. It is not necessary that the defendant's conduct be the sole cause of the loss of love and affection because the proximate cause element is satisfied if the conduct is "the controlling or effective cause." *Heist*, 46 N.C. App. at 523, 265 S.E.2d at 436. A person, however, "is not liable for merely becoming the object of the affections that are alienated from a spouse." *Peake v. Shirley*, 109 N.C. App. 591, 594, 427 S.E.2d 885, 887 (1993). Liability arises only if there is some "active participation, initiative or encouragement on the part of the defendant." *Id*. The alienated spouse's consent to or even initiation of the conduct that led to the loss of affection provides no defense to a plaintiff's claim.[3] 1 Reynolds, at 399.

I

[1] In this case, Defendant argues the merits of the alienation of affection claim must be evaluated based solely on the events occur-

2. "There is no liability for alienation of affection if the defendant is ignorant of the existence of the marriage." David A. Logan & Wayne A. Logan, *North Carolina Torts* § 20.30[4], at 444 (1996). A Defendant's ignorance of the existence of the marriage is in the nature of an affirmative defense and must be pled and proven by the defendant. *See* N.C.G.S. § 1A-1, Rule 8(c) (1999).

3. This aspect of the law has given rise to substantial criticism of the tort because it regards the alienated spouse as an object to be stolen away and completely negates the free will and individual mind of that spouse. Any abrogation of this tort, however, is for our Supreme Court or the General Assembly. *See Cannon v. Miller*, 313 N.C. 324, 327 S.E.2d 888 (1985) (our Supreme Court can abolish common law torts); *Anderson v. Assimos*, 146 N.C. App. 339, 344, 553 S.E.2d 63, 67 (2001) (General Assembly can abolish common law torts).

ring prior to 8 June 1996, the date Pharr and Plaintiff separated. Plaintiff, on the other hand, contends her claim is properly founded on events occurring at any time prior to the spouses' divorce, including that period of time after the spouses separate. There is authority for Plaintiff's position, and it is based on the rationale "that even though the spouses are living apart, there is always a chance of reconciliation." 1 Homer H. Clark, *The Law of Domestic Relations in the United States* § 12.2, at 656-57 (2d ed. 1987). This principle, however, is incompatible with our current alimony entitlement statute that defines "marital misconduct" as including only those "acts that occur during the marriage and prior to or on the date of separation," N.C.G.S. § 50-16.1A(3) (1999), and simply permits consideration of "incidents of post date-of-separation marital misconduct as corroborating evidence supporting other evidence that marital misconduct occurred during the marriage and prior to [the] date of separation," N.C.G.S. § 50-16.3A(b)(1) (1999). It would therefore be inconsistent to permit a spouse to recover damages in an alienation of affection claim against a third party for post-separation conduct while prohibiting consideration of a spouse's post-separation conduct in an alimony claim. Accordingly, an alienation of affection claim must be based on pre-separation conduct, and post-separation conduct is admissible only to the extent it corroborates pre-separation activities resulting in the alienation of affection.[4]

## II

**[2]** Our review of the pre-separation evidence in this case reveals substantial evidence Defendant engaged in intentional conduct that probably affected Pharr's marital relationship with Plaintiff and that this conduct was the effective cause of Pharr's loss of love and affection for Plaintiff. *See Allen v. Roberts Constr. Co.*, 138 N.C. App. 557, 567, 532 S.E.2d 534, 541 (directed verdict motions must be overruled if there exists substantial evidence in support of claim), *disc. review denied*, 353 N.C. 261, 546 S.E.2d 90 (2000); *see also Heist*, 46 N.C. App. at 526, 265 S.E.2d at 438 (same test to be applied to directed verdict and judgment notwithstanding the verdict motions). Prior to 8 June 1996, Defendant knew Pharr was married to Plaintiff; she met with Pharr regularly; she held Pharr's hand in Plaintiff's presence when Pharr was in intensive care; she came to the hospital on weekends; she gave him several presents; she gave Pharr flirtatious looks; she invited Pharr to her home and offered to move out when Beck

---

4. Although not raised in this case, we note that the same principles would apply in a criminal conversation case.

found her there with Pharr; Beck saw Pharr coming out of Defendant's bedroom, where mixed drinks were later found; she gave Pharr a calling card and instructions on how to call her while Pharr was vacationing with Plaintiff; she let Pharr use her post office box; and she asked Pharr to help her remodel the house in which they subsequently lived together. Evidence of the post-separation sexual intercourse between Defendant and Pharr corroborates the pre-separation relationship between these parties. Thus, the trial court correctly denied Defendant's motions for directed verdict and judgment notwithstanding the verdict. The judgment for Plaintiff in the amount of $101,250.00 must therefore be sustained.[5]

No error.

Judges HUNTER and THOMAS concur.

───────────

5. Because claims for alienation of affection and criminal conversation "are so connected and intertwined," *Gray v. Hoover*, 94 N.C. App. 724, 731, 381 S.E.2d 472, 476 (1989), there should be only one issue of damages submitted to the jury. When a damages issue is submitted to the jury on alienation of affection and a separate damages issue submitted on criminal conversation, a plaintiff is entitled to recover only the larger of the two verdicts. This issue was not raised on appeal, either by assignment of error or in the briefs, and accordingly, we are without authority to mandate modification of the judgment. *See* N.C.R. App. P. 10(a); N.C.R. App. P. 28(a). We likewise refuse to address the appropriateness of a Rule 60(b) motion to address this issue, as such a matter is reserved for the trial court on remand. *See* N.C.G.S. § 1A-1, Rule 60(b) (1999).