**Walter LONG, Appellant,**

**v.**

**Jonathan E. OSTROFF, D.O., Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 25, 2004.

Filed June 23, 2004.

Timothy M. Kolman, Langhorne, for appellant.

Linda Carpenter, Philadelphia, for appellee.

BEFORE: TODD, PANELLA, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 In this appeal, we are asked to consider whether Pennsylvania recognizes a claim for professional negligence where a doctor has a covert sexual relationship with a patient's spouse. We conclude that a claim for professional negligence is not cognizable under the facts of this case, because a general practitioner's duty of care does not prohibit an extramarital affair with a patient's spouse. Although such conduct may be unethical, it does not provide a cause of action for negligence. Thus, we affirm.

¶ 2 At the relevant time, Walter Long (Patient) was married to Roseanne Long (Roseanne). Both were patients of Dr. Jonathan Ostroff. We will set forth the facts as the trial court described them:

> [Patient] brought suit for professional negligence against [Dr. Ostroff], his family physician, based upon [Dr. Ostroff's] adulterous relationship with [Roseanne]. While serving as [Patient's] physician for six years (1992–1998), [Dr. Ostroff] began a sexual affair with [Roseanne] in September, 1998. [Patient] alleges [Dr. Ostroff] was negligent because during an office visit on October 27, 1998, where he was examined for chest pain, back pain, and anxiety [Dr. Ostroff] did not disclose his sexual relationship with [Roseanne]. We note [Rosanne] had previously expressed her intent to divorce [Patient]. In fact, five days prior to said office visit, [Patient] and [Roseanne] separated for the final time. They divorced five months later.

Trial Court Opinion (T.C.O.), 8/14/03, at 1. Dr. Ostroff and Roseanne are now married

to each other. Patient alleges that during Dr. Ostroff's examination of Patient, Patient requested a referral to a mental health professional because of his marital problems. Patient does not argue that Dr. Ostroff's actual medical diagnosis was in any way negligent.

¶ 3 Patient filed the instant suit on August 9, 2000, alleging medical malpractice, loss of consortium, and punitive damages. When Dr. Ostroff filed preliminary objections, Patient withdrew the loss of consortium claim and the court struck the punitive damages claim. During discovery, Patient found a board-certified psychiatrist who would testify that Dr. Ostroff's actions did not comport with the standards of a general physician. Upon the completion of discovery, Dr. Ostroff filed a motion for summary judgment. The next week, Patient filed a petition to amend his complaint to add a claim for intentional infliction of emotional distress. Dr. Ostroff opposed the petition, claiming it was time-barred. The trial court denied Patient's petition to amend. A few months later, the court denied Dr. Ostroff's motion for summary judgment. Dr. Ostroff appealed to our court pursuant to 42 Pa.C.S. § 702(b), but we declined to hear the case at that time. We remanded the matter back to the court of common pleas for trial.

¶ 4 On May 9, 2003, Dr. Ostroff filed a pretrial motion entitled a "Motion to Dismiss," asserting that Patient did not present any cognizable claim. During the hearing on the motion, Patient did not make any objection concerning coordinate jurisdiction. After argument, the Honorable Sandra Mazer Moss concluded that Patient had not pleaded adequately any claim entitling him to relief, and granted Dr. Ostroff's Motion to Dismiss. Judge Moss opined that Patient's only possibly sustainable claim would be intentional in-

fliction of emotional distress. Patient appealed.

■ ¶ 5 Patient raises the following questions for our review:

1. Should Pennsylvania recognize a cause of action in medical malpractice when a physician harms his patient by having sexual relations with the patient's wife who also happens to be the physician's patient?

2. Is [Patient's] expert qualified to render an opinion regarding the medical negligence of [Dr. Ostroff], does he do so adequately, and should his testimony be admitted in light of the Medical Care Liability & Reduction of Error Act?

3. Did the Philadelphia [County] Court of Common Pleas abuse its discretion when one judge denied [Dr. Ostroff's] Motion for Summary Judgment and another Judge of the same court later dismissed the case before trial?

4. Did the Philadelphia [County] Court of Common Pleas abuse its discretion when one judge found no cause of action for intentional infliction of emotional distress, but another judge of the same Court dismissed [Patient's] action on the basis that [Patient's] only valid cause of action might have been intentional infliction of emotional distress?

5. Should this Court permit an amendment to [Patient's] Complaint for a count of Intentional Infliction of Emotional Distress, a breach of fiduciary duty[,] and should this Court reinstate the punitive damages count which was dismissed without prejudice in the initial stages of the proceedings?

5. [*sic*] Is the medical malpractice in this case so clear that even if [Patient's] expert's testimony were precluded, a jury could still find that [Dr. Ostroff] had breached his duty of care to [Patient]?

Brief for Appellant at 3–4. Before proceeding, we note with strong disapproval that Patient violated the express mandates of the Pennsylvania Rules of Appellate Procedure. Patient's lengthy Statement of the Questions Involved exceeds one page. *See* Pa.R.A.P. 2116(a). Patient's brief does not contain a "Statement of both the scope of review and standard of review." Pa. R.A.P. 2111(a)(2). In addition, Patient divided his argument into *eleven* parts even though he raises *six* questions for review. *See* Pa.R.A.P. 2119(a). Moreover, Patient's Summary of the Argument exceeds two pages. *See* Pa.R.A.P. 2118. We admonish Patient for these clear violations. Nevertheless, because they do not impede our ability to review the issues at hand, we will consider Patient's questions for review. *See, e.g., Savoy v. Savoy,* 433 Pa.Super. 549, 641 A.2d 596, 598 (1994).

■ ¶ 6 Since the Rules of Civil Procedure do not recognize a Motion to Dismiss as a separate motion, we will characterize it as a motion for summary judgment. *See DiGregorio v. Keystone Health Plan E.,* 840 A.2d 361, 365–66 (Pa.Super.2003) (contending that a motion to dismiss can be characterized as a motion for summary judgment). When reviewing a grant of a motion for summary judgment, "our review is plenary." *Murphy v. Duquesne Univ. of the Holy Ghost,* 565 Pa. 571, 777 A.2d 418, 429 (2001). We will not disturb the trial court's order absent an error of law or abuse of discretion. *See id.* "[W]here there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered." *Id.* "Lastly, we will view the record in the light most favorable to the non-moving party, and all

doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Id.*

■■ ¶ 7 We first consider whether a claim for medical malpractice is cognizable, as a matter of law, when a physician has an affair with his patient's spouse. Like the parties and trial court, we acknowledge that this is a novel issue in Pennsylvania. After careful analysis, we conclude that a claim for professional negligence cannot be sustained based upon a general practitioner having an affair with his patient's spouse, who is also a patient.

■ ¶ 8 A medical malpractice claim is not cognizable unless the physician owes his patient a duty of care. *See Rachlin v. Edmison,* 813 A.2d 862, 868 (Pa.Super.2002). Whether a physician owes a duty to his patients is a question of law. *See Emerich v. Phila. Ctr. for Human Dev., Inc.,* 554 Pa. 209, 720 A.2d 1032, 1044 (1998). Upon review, we conclude that a general practitioner's duty of care does not prohibit an extramarital affair with a patient's spouse. For his contention that Dr. Ostroff owed him a duty of care not to engage in a sexual relationship with his wife, Patient relies heavily and solely on *Mazza v. Huffaker,* 61 N.C.App. 170, 300 S.E.2d 833 (1983). The *Mazza* court found that psychiatrists have a duty not to engage in sexual relations with their patients' spouses. *See id.* at 838. Even though *Mazza* is not binding, *see Sternlicht v. Sternlicht,* 822 A.2d 732, 742 n. 9 (Pa.Super.2003), we also distinguish *Mazza* on two grounds.

¶ 9 First, in *Mazza,* the court took great care to enunciate why *psychiatrists* have a burdensome duty to maintain their patients' trust:

These basic duties apply and are even more stringent with psychiatrists, since a psychiatrist's patient reveals his inner-most thoughts, feelings, worries, and concerns. Psychiatrists, therefore, have a strict duty not to breach the trusting relationship and must be very careful about what they say and how they influence patients. * * * * Especially in light of the intimate relationship between psychiatrist and patient, the psychiatrist's duty once the psychiatrist-patient relationship has been established extends beyond the hospital or consulting room and includes social situations. * * * * Covert sexual relations between a psychiatrist and a patient's wife, if discovered by the patient, would make it extremely difficult for the patient to establish ever again a necessary trusting relationship with any psychiatrist, would render previous treatment useless, and would do harm to the mental well-being of the patient.

*Mazza,* 300 S.E.2d at 837–38. Accordingly, we conclude that the *Mazza* decision, with its countless references to a *psychiatrist's* special duty, does not extend to general practitioners.

¶ 10 Second, when the North Carolina Court of Appeals decided *Mazza,* North Carolina law recognized claims for criminal conversation and alienation of affection. *See Cannon v. Miller,* 71 N.C.App. 460, 322 S.E.2d 780 (1984), *vacated* 313 N.C. 324, 327 S.E.2d 888 (1985) (abolishing criminal conversation and alienation of affection until the North Carolina Supreme Court vacated the court of appeals' decision on procedural grounds three months later). Criminal conversation occurs when the defendant has sexual intercourse with the plaintiff's spouse while the plaintiff and spouse are still married; it is an interference with "the fundamental right to exclusive sexual intercourse between spouses." *Johnson v. Pearce,* 148 N.C.App. 199, 557 S.E.2d 189, 190 (2001) (internal question marks omitted). Similarly, a claim for alienation of affection requires proof that

defendant's "malicious acts" caused the loss of love and affection in the plaintiff's marriage. *See Pharr v. Beck,* 147 N.C.App. 268, 554 S.E.2d 851, 854 (2001). Accordingly, under North Carolina law, there are instances under which a person may prevail in a lawsuit against his or her spouse's paramour for the paramour's sexual relationship with the plaintiff's spouse. Hence, a cause of action for having a sexual relationship with the plaintiff's spouse would be consistent with North Carolina law. Pennsylvania, on the other hand, has abolished these tort claims. *See* 23 Pa. C.S. § 1901; *Fadgen v. Lenkner,* 469 Pa. 272, 365 A.2d 147 (1976). Therefore, *Mazza* is not persuasive; we find no duty.

¶ 11 Because we concluded that no duty exists, we do not need to address Patient's second and sixth questions for review since they presuppose that the malpractice claim is cognizable. Accordingly, we now move to Patient's third question for review. Patient contends that Judge Moss abused her discretion by violating the coordinate jurisdiction rule. Patient claims the court violated this rule because Judge Moss granted Dr. Ostroff's Motion to Dismiss and the Honorable Arthur S. Kafrissen denied Dr. Ostroff's earlier summary judgment motion. We first examine whether Patient has properly preserved this issue.

¶ 12 At the hearing on the Motion to Dismiss, Patient's counsel noted that the judge had instructed Dr. Ostroff to file a motion *in limine,* but Dr. Ostroff filed a motion to dismiss instead. Patient's counsel stated that the motion to dismiss went beyond "the way Your Honor skillfully circumscribed the issues in this case." Notes of Testimony (N.T.), 6/20/03, at 2. Patient's counsel did not object or mention the coordinate jurisdiction rule. Shortly after that, Dr. Ostroff's counsel said, "I presume then with that change, Counsel will no longer argue [co]ordinate jurisdiction argument before Your Honor." N.T., 6/20/03, at 3. Again, Patient did not object or respond in any way. Even when it was Patient's turn to argue on the motion, Patient did not object or mention the coordinate jurisdiction rule. Thus, Patient has waived this issue. *See* Pa.R.A.P. 302(a); *Foflygen v. Allegheny Gen. Hosp.,* 723 A.2d 705, 711 (Pa.Super.1999).

¶ 13 Patient also posits that Judge Moss abused her discretion when she found that Patient might have a valid cause of action for intentional infliction of emotional distress since another judge of the same court did not permit Patient to amend his complaint to add an emotional distress claim. We find no abuse of discretion or error. Judge Kafrissen did not permit Patient to amend his complaint; the statute of limitations had expired. *See* 42 Pa.C.S. § 5524(7). Patient has not demonstrated any abuse of discretion in the court's acknowledgement that Patient is time-barred from raising his only potentially cognizable claim. We find no error.

¶ 14 Finally, Patient contends that our Court "should ... permit an amendment to [his] Complaint" to add counts of intentional infliction of emotional distress and breach of fiduciary duty, and to reinstate the punitive damages count. Brief for Appellant at 3. We will not exceed our scope of review. Our review is limited to considering whether the trial court erred or abused its discretion in granting the motion to dismiss. *See Murphy,* 777 A.2d at 429. Patient has not shown any error or abuse of discretion by the trial court.

¶ 15 Order **AFFIRMED.**